## Wood and another v. Packer.

*(Circuit Court, D. New Jersey.* July 14, 1883

1. PATENTS FOR INVENTIONS—REISSUE.
   Reissued letters patent No. 9,368, dated August 31, 1880, for an improved coal cart with a sliding extension chute, *held* valid.

2. SAME—PATENTABILITY OF COMBINATION OF OLD ELEMENTS.
   A mere aggregation of old things is not patentable, and, in the sense of the patent law, is not a combination. In a combination the elementary parts must be so united that they will dependently co-operate and produce some new and useful result, and such result must be a product of the combination and not a mere aggregate of several results, each the complete product of the combined elements.

3. SAME—NOVELTY—RESULT.
   The subject-matter of a supposed invention is new, in the sense of the patent law, when it is substantially different from what has gone before it, and this is determined by the character of the result, and not the amount of skill, ingenuity, or thought exercised; and if the result has been substantially different from what had been effected before, the invention is patentable.

4. SAME—MECHANICAL SKILL.
   When the results are produced by mere mechanical skill, or where the change is only in degree and not new, the improvement is not patentable.

5. SAME—REISSUE—VOID CLAIM.
   An entire reissue will not be avoided on account of the existence of one void claim.

In Equity.

*F. C. Lowthorp, Jr.,* for complainant.

*James Buchanan,* for defendant.

NIXON, J. This action is brought against the defendant for infringing certain reissued letters patent, No. 9,368, dated August 31, 1880. The Delaware Coal & Ice Company was the owner of the original patent, No. 73,684, and brought suit in this court against the same defendant for their infringement. It was found, upon examination, that although the patentee in his specifications stated the nature of his invention to consist in the funnel-shaped mouth attached to the cart, in combination with the chute and valve, he had failed to make any claim for such combination; and as none of the separate constituents, as set forth in the three claims, were new, the court was obliged to hold that the defendant was not shown to have infringed anything claimed in the complainant's patent. Since then the original patent has been surrendered, and a reissue obtained, with quite a different statement of the inventor's claims. They are as follows: (1) The combination of the body of a coal cart with a sliding extension chute, substantially as and for the purpose set forth; (2) the combination of the body of a coal cart and the outlet, having a gate or valve, with a sliding extension chute, adapted to the said outlet, substantially as specified.

The answer sets up three defenses: (1) That the reissue is void because the combination claimed is an expansion of the original; (2) want of novelty in the patent; (3) non-infringement.

The second is the only one of these defenses which seems to have merit, or which has been the occasion of any serious or extended in-.

quiry. Do the specifications and claims of the patent as reissued indicate invention on the part of the patentee? The patent is for a combination, the constituents of which are stated in the claims above quoted. There is no difference, in fact, between the claims, except that the second has one element which is not named in the first, to-wit, the outlet, having a gate or valve, and which is the means of communication between the first and third constituents of the combination. Its absence gives much force to the argument of the learned counsel of the defendant, that the first claim is void because the parts are old, and there is no dependence or co-operation in their action whereby any new result is obtained. A mere aggregation of old things is not patentable, and, in the sense of the patent law, is not a combination. In a combination, the elemental parts must be so united that they will dependently co-operate and produce some new and useful result. A coal cart is not novel, nor is the chute for conducting coal from the cart to the place of its destination. These two instrumentalities are aggregated in the first claim; but no mechanism is suggested whereby the coal can be got out of the cart and into the chute. The complainant (Wood) testifies as a witness that it can be accomplished by the use of a man with a shovel. This is probably true; but it is difficult to see how the inventive faculty is put in exercise by any such arrangements. It is not necessary, however, to dwell upon this view of the case, because the entire reissue will not be avoided on account of the existence of one void claim. See *Carlton* v. *Bokee*, 17 Wall. 463.

The constituents of the second claim of the reissue are (1) the cart or wagon; (2) the outlet, with a gate or valve; and (3) the sliding extension chute. The patentee was asked whether he thought any of these elements, separated from the others, was novel, (Com. Rec. 28-9,) and replied, "I do not think they are, but only in combination."

The case is then presented here which was considered by the supreme court in *Hailes* v. *Van Wormer*, 20 Wall. 368, and in which Mr. Justice STRONG, speaking for the whole court, said:

"All the devices of which the alleged combination is made are confessedly old. No claim is made for any one of them singly as an independent invention. It must be conceded that a new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known and in common use before the combination was made. But the results must be a product of the combination, and not a mere aggregate of several results, each the complete product of one of the combined elements. * * * Merely bringing old devices into juxtaposition and then allowing each to work out its own effect, without the production of something novel, is not invention."

The question, then, is in regard to the second claim of the complainants' reissue: Is it a patentable combination, producing new and useful results, or is it a mere aggregation of old elements, each working out alone its single individual effect?

It is not a question of easy solution, for it requires us to find the

exceedingly delicate line which divides patentability from simple mechanical skill, or to ascertain the difference between real invention and a double use or application of something that has existed before. Mr. Curtis, in section 41 of his treatise on the Law of Patents, in discussing this subject, says:

"The subject-matter of a supposed invention is new, in the sense of the patent law, when it is substantially different from what has gone before it; and this substantial difference, in cases where other analogous or similar things have been previously known or used, is one measure of the sufficiency of invention to support a patent. Our courts have, in truth, without always using the same terms, applied the same tests of the sufficiency of invention which the English authorities exhibit in determining whether alleged inventions of various kinds possess the necessary element of novelty; that is to say, in determining this question, *the character of the result, and not the apparent amount of skill, ingenuity, or thought exercised, has been examined;* and if the result has been substantially different from what had been effected before, the invention has been pronounced entitled to a patent."

If all improvements upon existing organisms were patentable, there would be no doubt about sustaining at once the complainant's patent. But sometimes better results are produced by mere mechanical skill, without the exercise of invention. The law does not extend to or cover such cases, (*Smith* v. *Nichols,* 21 Wall. 118;) nor where the change is only in degree, and not new, (*Guidet* v. *Brooklin,* 105 U. S. 552; *McMurray* v. *Miller,* 16 FED. REP. 471.)

The complainant's patent is undoubtedly a great improvement upon everything that went before it. The invention of William Bell (*letters patent No. 14,301, granted February 26, 1856*) was set up by the defendant as an anticipation, and it certainly contains valuable suggestions. His dumping wagon, however, could not be used for delivering coal in cellar windows, but only for dumping it into pavement vault-holes, where they happened to exist in front of houses, at a proper distance from the edge of the pavement, and it seems to lack adjustability for doing even this successfully.

The evidence shows that Richard Hammell, a respectable citizen of Chambersburg, was formerly engaged in the coal business in Lambertville, New Jersey, and that as early as 1863 he was in the habit of using chutes in delivering coal from a wagon into a cellar. He thinks that he introduced the double or sliding chutes in the fall of 1865, and continued to use them for 10 years. The narrow end of one passed into the wider end of the other. He used the double chutes when the distance for delivery was too far for the single. When the distance was greater than the single chute, they pushed them one into the other to adjust the length. When the distance was still greater, they had chutes that would reach any house. The longest single chute was 16 feet; by combining them they could reach 24 feet, or more, if necessary. When more than one was used, they carried a light trestle to support them in the middle. * * * They had half a dozen such chutes, and when they had occasion put them together.

Peter C. Hoff was also in the coal business in Lambertville, in the

spring of 1867, and has continued therein ever since. He used chutes of different lengths, made tapering, and growing smaller to the end, which went into the cellar. The lower end would rest on the cellar window, or the place made to put in the coal. He used more than one at a time, but not frequently. He generally had three chutes,—one about 7 feet long, one about 12, and the other about 14 feet. Then if the place to put the coal in was 10 feet from the line of the street, he would use two chutes, would shove the small end of the one into the larger end of the other, with a trestle under where the connection was, and also a prop by the wagon,—being a seat, board, or something similar,—in order to hold it up to let the coal run into the cellar. He used the 14-feet chute and the 7-feet together in that way, which was about the longest distance he ever used the chute. But in all these cases the coal was shoveled from the wagon into the chutes, which were not attached to the wagon in any way. This testimony exhibits the state of the art when the complainant appeared with his improvement. He has not very largely exercised the inventive faculty in what he has done. His combination is so simple that it seems wonderful that other persons did not think of it. But they did not, and if it has effected any new and useful result the law protects him in its exclusive use. The evidence reveals that by his combination of old instrumentalities a load of coal can be emptied from a cart into a cellar without the agency of a man using a shovel. This is a new result, worthy of the notice of the law, and it is the duty of the court to give to the patentee the benefit of his invention.

A decree must be entered for the complainant, and a reference made for an account.