## In re HUEBER et al.
### Patent Appeal No. 3291.

Court of Customs and Patent Appeals.
May 31, 1934.

Bean & Brooks, of Buffalo, N. Y. (Harrison M. Brooks, of Buffalo, N. Y., of counsel), for appellants.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The appellants have filed their application in the United States Patent Office for a patent on an alleged improvement in combination fuel and vacuum pump for use on motor vehicles. Many claims were attached to the application, all of which were rejected by the Primary Examiner. Thereupon the applicants were permitted to substitute new claims, 36 to 46, inclusive, to place the issues in better form for purposes of appeal. All of these claims were rejected by the Examiner, on the grounds of aggregation. The Examiner also cited, as prior art, on the various elements of the alleged aggregation, the following: Jay, 1,288,420, December 17, 1918; McKinley, 1,738,786, December 10, 1929.

Additional references were cited by the Examiner, as to the element of the operation of two pumps from the same drive, as follows: White, 734,029, July 21, 1903; Hall, 455,868, July 14, 1891; Leach, 884,097, April 7, 1908; Laurin, 1,151,278, August 24, 1915.

An affidavit having been filed after appeal from the decision of the Examiner, under rule 138 of the Patent Office, the matter was remanded to the Examiner for further consideration under the provisions of rule 76 of said office. The Examiner made a supplemental statement, adhering to his former decision that the claims should be rejected on the ground of aggregation. This decision was affirmed by the Board of Appeals and the matter is brought here for review by the applicants.

On hearing before the court, counsel for appellants selected claims 40, 42, 43 and 46 as typical of all the claims. Claim 40 follows:

"40. A combination pump for insertion in the liquid fuel feed line and the accessory suction line of motor vehicles, comprising a fuel pump chamber having an inlet for connection with a fuel supply and an outlet for connection with a carburetor, a suction pump chamber having an inlet for connection with a suction operated motor and an outlet for connection with the intake manifold of the vehicle's internal combustion engine, a fluid displacing element for each pump chamber, each fluid displacing element being movably responsive to abnormal fluid pressure conditions in its associated pump chamber, the fluid displacing element of the fuel pump chamber being movably responsive to supernormal fluid pressure and the fluid displacing element of the suction pump chamber being movably responsive to subnormal fluid pressure, a common actuator for the two fluid displacing elements acting to impart a positive fuel intaking stroke to the displacing element of the fuel pump chamber and a positive air expelling stroke to the displacing element of the suction pump chamber, means connecting each fluid displacing element to the common actuator, and independently of the companion fluid displacing element, for transmitting

said positive stroke, said actuator having an idling return stroke and said connecting means embodying a play connection permitting return movement of the actuator independently of both fluid displacing elements and irrespective of the position of said actuator during such return stroke, and means yieldably urging the fluid displacing element of the fuel pump chamber on its liquid discharging stroke and the fluid displacing element of said suction pump chamber on its air intaking stroke."

The device disclosed by the appellants in their specification and drawings is an aggregation or combination of a gas or fuel pump to supply fuel to the carburetor of an internal combustion engine, and a pump operated by the suction of the intake manifold of such an engine to operate an accessory of the vehicle, such as a windshield wiper. A common housing supports both mechanisms, and is mounted in some convenient place on the engine. The fuel pump is of the ordinary diaphragm type, having an intake from the gasoline supply, with a check valve, and an outflow pipe to the carburetor, which pipe also has a check valve. The diaphragm is within the piston chamber of a pump housing and is connected to its piston rod, which is slidably guided through a head or web in the lower side of the housing. This rod has, connected to its lower end, a link having a slot therein, in which slot the work arm of a lever operates. The end of this arm is smaller than the slot, and may move up and down therein without engaging the same, when idling. This work arm is fulcrumed, and its ends are caused to oscillate upward and downward by means of a following roller, tracking the periphery of a cam which is operated by the motor engine.

When there is back pressure of motor fuel in the piston chamber of the fuel pump housing, the work end of the said lever will idle in the slot of the piston rod, and fuel consequently will not be pumped, until such back pressure is relieved by the use of the excess fuel.

Below the fuel pump, and so disposed that the same work arm of the lever heretofore mentioned will operate it, is a vacuum pump for operating a windshield cleaner of the ordinary type. This pump is connected, by piping, to the intake manifold, and has a check valve in said piping. The piston in this pump is normally operated by the work arm of the lever heretofore described, being driven downward by said lever and returned to its position by a spiral spring. Whenever the suction created by the engine exceeds a predetermined normal amount, and overcomes the opposition of the spiral spring in said vacuum pump, the piston therein is drawn downward and remains in that position until the normal degree of manifold suction is resumed, when the lever will again resume its function of operating said piston.

In addition, on the bottom of the piston in said vacuum pump is a throttling valve attached to said piston, and which prevents the effects of variations in the operation of said windshield cleaner by seating itself in the opening in the pipe leading into said intake manifold, closing the same except to allow a "bleed passage" therein.

The appellants claim that they have disclosed a combination which produces a new and useful result. Both tribunals in the Patent Office, as well as the solicitor in his argument here, insist that the appellants have simply made an aggregation of elements well known in the prior art, and with no new, useful, and unexpected result. They insist that the appellants have a fuel pump of a type well known in the prior art; that they have a vacuum pump operated by manifold suction which is also well known in the prior art; and that there is nothing inventive in operating these two devices by the same lever or source of power. They also insist that the fuel pump may be detached, leaving the lever and vacuum pump, and that the vacuum pump will operate exactly in the same manner as if the fuel pump were present. They also contend that the same is true as to the fuel pump, if the vacuum pump be detached; that both pumps are distinct and perform their functions as before, and that there is no invention in thus assembling them. On the other hand, counsel for appellants do not deny that the elements are old, but insist that a new and useful result, and a patentable combination, has been created by the assemblage of these elements in the manner which the appellants have here disclosed.

The reference Jay, in our opinion, discloses the device shown by the appellants' vacuum or suction pump element. McKinley also discloses an anticipation of the fuel pump element with a means to take care of back pressure. The cited art also clearly shows that there is nothing inventive about the idea of driving two pumps by the same mechanical means.

The distinction between a patentable combination and an aggregation has been the subject of much discussion by the courts, and is oftentimes a troublesome question.

However, we think the cases have made quite plain what the decision should be here. The first case to which reference is made is Reckendorfer v. Faber, 92 U. S. 347, 353, 23 L. Ed. 719. This is the famous lead pencil case, involving alleged combination of a lead pencil having a rubber upon one end thereof. This device was held by the court to be not a patentable combination, upon principles which have often been cited by the courts. Hunt, Justice, in speaking for the court, said, among other things: " * * * But the results must be the product of the combination, not a mere aggregate of several results, each the complete product of one of the combined elements. * * * Does it embody any new device, or any combination of devices producing a new result? * * * The combination, to be patentable, must produce a different force or effect, or result in the combined forces or processes, from that given by their separate parts. * * * The result comes from the combined effect of the several parts, not simply from the separate action of each, and is, therefore, patentable."

In Grinnell Washing Machine Co. v. Johnson Co., 247 U. S. 426, 38 S. Ct. 547, 549, 62 L. Ed. 1196, an alleged combination of a washing machine and wringer operated by one motor and with gearing, was held by the Supreme Court to be not a combination, but an aggregation. Again, stating the doctrine which it had followed since Hailes v. Van Wormer, 20 Wall. 353, 368, 22 L. Ed. 241: " * * * Generally speaking, a combination of old elements in order to be patentable must produce by their joint action a novel and useful result, or an old result in a more advantageous way. * * * To borrow an illustration made at the argument, we think the Phillips aggregation of elements may be likened to the operation of a number of different machines in a factory by power applied from the same line shaft, each operation contributing its separate part to the production of a given result. * * *"

This is the law on the subject, and has been followed in many cases, a few of which are: Firestone Tire & Rubber Co. v. Seiberling (C. C. A.) 257 F. 74, 82; Skinner Bros. Belting Co. v. Oil Well Improvements Co. (C. C. A.) 54 F.(2d) 896; Sands Mfg. Co. v. Smith (C. C. A.) 53 F.(2d) 459; Durham v. Seymour, 6 App. D. C. 78, 103; In re The Germantown Trust Co., 57 F.(2d) 365, 19 C. C. P. A. 1140.

In our opinion, the device of the appellants constitutes an aggregation and not a combination. It may be more convenient,

economical, and compact than prior devices. However, this does not render it patentable. There must be invention.

As we find no error in the decision of the Board of Appeals, the same is affirmed.

Affirmed.

HATFIELD, Associate Judge, did not participate.