**SINCLAIR REFINING CO. v. MARTIN & SCHWARTZ, Inc.**

No. 1869.

District Court, W. D. New York.

June 10, 1935.

154

Slee, O'Brian, Hellings & Ulsh, of Buffalo, N. Y., and Pennie, Davis, Marvin & Edmonds (by Dean S. Edmonds and Raymond F. Adams), all of New York City, for plaintiff.

Albert R. Henry and Wilcox & Van Allen (John W. Van Allen, of counsel), all of Buffalo, N. Y., for defendant.

KNIGHT, District Judge.

This action is brought to restrain the defendant from further infringing the rights claimed to be secured to the plaintiff by letters patent No. 1,948,191 covering certain improvements relating to a price indicator, and to recover damages suffered by reason of the alleged infringement by the defendant. The defenses are noninfringement, invalidity of the patent over the prior art, and misconduct of the plaintiff in the course of the prosecution of the application to the final grant of the patent.

Claim 4 of the patent reads as follows: "In apparatus of the class described, the combination of a supporting frame having channels secured to an outer surface thereof, said channels being arranged to form a longitudinal slot open at one end, and an indicating strip folded to provide a plurality of flat display sections of substantially the same width and having characterbearing surfaces thereon, said channels being of such width and so positioned relative to the thickness of the folded indicating strip and to the width of the sections of the folded indicating strip respectively, as to firmly hold the indicating strip when closely folded and inserted in the said slot."

Although not mentioned in the claim, the supporting frame is described in the specification as comprising a long, narrow, and deep tray open at its upper end, providing storage space for display strips which are not in use. For one of the slots a total indicating strip is provided. This consists of an accordion fold strip having 10 faces, each face bearing a printed table listing the total prices, corresponding to a given unit price, for quantities of from 1 to 20 units. One strip is provided for each unit price and fractional values. For example, one strip contains tables showing multiple unit prices based on a unit price of 18 cents, $18\frac{1}{10}$ cents, and for each additional $\frac{1}{10}$ cent up to $18\frac{9}{10}$ cents. To cover a normal price range additional strips are provided which may be stored as previously described.

Defendant's sign consists of a metal frame having channel members on each side thereof so positioned as to form

a number of horizontal slots, into which may be inserted cards or folded paper strips. One vertical slot is provided. The center part of said frame is available for storage of cards, display strips, or books. This frame fits into a casing having glass panes positioned to allow the words or figures on the cards or strips inserted in the slots to be visible. The display strips used by defendant may be folded into sections of substantially equal size, each section bearing a numeral on each side. The display book is made up of a plurality of pieces sewed together to form a book type display. This also may be folded so as to display the figure on any particular section of the book. The vertical slot holds a total indicator strip similar to that used by plaintiff; the extra strips being stored in the center of the frame.

■ Defendant asserts that its signs do not read within this claim, because horizontal slots are employed and not the vertical slots of the patent. A careful reading of the claim discloses that a longitudinal slot is specified. Longitudinal means extending in a lengthwise direction. Inasmuch as the channels of defendant's sign run the long way of the sign, I conclude that it reads within the claim in this respect. While the patent drawings indicate vertical slots and some of the claims also specify that they shall be vertical, it might be assumed that the word "longitudinal" used in this claim was intended to cover a different arrangement. This would necessarily be so were it not for the fact that the claim later specifies that the channels are of such width and so positioned relative to the width of the sections of the folded indicating strip as to firmly hold the indicating strip when closely folded and inserted in the said slot. This language indicates that the claim was drawn with vertical channels in mind, as otherwise the claim would have specified that channels should be of such width and so positioned relative to the height of the sections of the folded indicating strips as to firmly hold said strips when folded and inserted in said slot. The specification suggests that, if desired, the indicating strip may be folded on an horizontal rather than a vertical axis, but does not suggest that the channels might be changed from a vertical to a horizontal plane.

[2, 3] The question arises whether the mounting of the slots or channels on a horizontal instead of a vertical plane is not an equivalent. The substitution of an equivalent does not avoid a charge of infringement. Walker on Patents, par. 74, and cases there cited. If the sign as changed by defendant is an equivalent, the above-mentioned rule applies even though no mention was made in the patent of the possibility of using such an equivalent. Walker on Patents, par. 412, and cases there cited.

In New Departure Bell Co. v. Hardware Specialty Co. (C. C.) 69 F. 152, it was held not inventive to substitute a horizontally working thumb lever for a vertically operated push bar. The use of horizontal slots is an expedient well known to the sign industry, so that a variation of the sign consisting only of changing the slots from vertical to horizontal involves identity of function and substantial identity of means of performing that function. Such a change is an equivalent and will not avoid the charge of infringement.

■ Defendant claims, as an added function for the sign with horizontal channels, that the base card which is used in plaintiff's structure need not be used, since the display strips may be snapped into place in the slot and need not be inserted by means of the open end of the slot. It is claimed that this is not possible with the vertical channels because, unless a base card is used to support the display strips, the upper strips will slide down over the lower ones under the vibration of the gasoline pump, and when a base card is used, insertion must be by means of the open end of the slot. This contention overlooks the fact that the patent specifies no specific depth for the channel slots nor any specific thickness for the display strips, and that these dimensions may be arranged to obviate the possibility of a slipping of the display strip even though not mounted on a base card, and that the display strips may be snapped into a vertical slot as well as into a horizontal slot. Defendant claims also that in its signs the channels are not of such width or so positioned relative to the thickness of the folded indicating strip and the width of the sections of the folded indicating strip, respectively, as to hold the indicating strip "firmly" when closely fold-

156

ed and inserted in the slot. Defendant further explains that it is not necessary to "closely" fold its indicating strip to insert it in the slot. The function of the close folding of the indicating strip is to enable it to be inserted into the slot formed by the channels. Beyond this there is no useful accomplishment. The function of the firm holding of the folded indicating strip is to maintain it in a position to display the proper figure and to maintain it in its proper position with respect to the other figures and words displayed. The degree of firmness or closeness required is that degree which will perform the function to which reference has been made above. Plaintiff's Exhibit 19, a model of the patented sign, and Plaintiff's Exhibit 28, the infringing sign, are found to contain channels of practically identical depth. Each will hold approximately the same quantity of display material as the other. Difference in the firmness of the holding of the display strip is apparent only when plaintiff's display strip is mounted on a base. Inasmuch as the claim does not specify that a base must be used with plaintiff's indicating strip, it is evident that defendant's structure does infringe this claim. Were the claim to be construed strictly according to the specifications, a base card would be required, in which case there would be no infringement by the defendant's structure.

By its answers to interrogatories propounded by the defendant, plaintiff has indicated that it makes no claim to infringement as to the casing or frame or display strips or books separately, but limits its claim to the use of the combination of casing, frame, and accordion folded or book type display material. The patent describes only the accordion or fan fold type of display strip, but it is claimed that the book type display is an equivalent, and therefore its use in combination with the other elements of the claim constitutes an infringement. It is true that both the fan fold and book display strip have a plurality of sections each bearing numbers, any one of which may be displayed by proper folding of the strip or book. Both are well known in the art as means of obtaining a compact grouping for a number of letters or figures. To substitute one of these forms for the other would not be regarded as invention, nor will such substitution avoid infringement. The function of the folded display strips and the books is to allow display of any figure desired. The means of performing this function is in the adaptability to folding so as to expose any section of the strip or book. Thus the function and the means are the same in both the fan fold strip and the book type display, and they must be regarded as equivalents. While the patent can by no means be considered a primary patent, because of the development of the art, it is entitled to a range of equivalents which will protect that addition, if any, to the art, which was contributed by its inventor. To regard the book type display as other than an equivalent and an infringement would deprive the inventor of such protection.

Claim 5 reads as follows: "In apparatus of the class described, the combination of a supporting frame having channels secured to an outer surface thereof, said channels being arranged to form a plurality of longitudinal slots open at one end, and a plurality of indicating strips each folded to provide a plurality of flat display sections having character-bearing surfaces thereon, the flat sections of each indicating strip being of substantially the same width, said channels being so positioned and of such width relative to the width of the sections of the folded indicating strips and the thickness of the folded indicating strips respectively, as to firmly hold one of the closely folded indicating strips when inserted in each of said slots."

This claim is in effect a repetition of claim 4, with the exception that it specifies a plurality of longitudinal slots and a plurality of indicating strips. Claim 4 having been found infringed, the same result must be reached in regard to claim 5.

Claim 12 reads as follows: "In apparatus of the class described, the combination of a casing provided with a transparent section in at least one side thereof, a supporting frame proportioned to snugly fit within said casing and removably disposed therein, a plurality of channels attached to an outer surface of said supporting frame and arranged to form a plurality of retaining slots open at one end and positioned to register with the transparent section of said casing, and a plurality of indicating strips each folded to provide a plurality of flat display sections of substantially the same width as the width of said slots one

of said folded indicating strips being firmly retained in each of said slots."

It is evident that this claim reads directly upon the defendant's structure, and is infringed thereby.

Investigation of the prior art discloses the use separately of all of the elements of the plaintiff's structure. Both the accordion fold display strips and the book type display were described by Gildemeyer in patent No. 498,053. The accordion fold strip was also used by Ringler, patent No. 1,462,825, and Rohlfes, patent No. 1,824,794, and Soesman, British patent No. 239,885. The use of a longitudinal open end channel for retaining a strip or book is illustrated by Gildemeyer. Vertical channels for retaining cards were used in Martin & Schwartz, patent No. 1,930,-445, and Hughes & Vahle, patent No. 1,964,798. Outer casings similar to that used by plaintiff are disclosed by Martin & Schwartz, patents Nos. 1,877,326 and 1,930,445; Higgins, patent No. 1,915,127, and Hughes & Vahle, patent No. 1,964,798. Schwartz, patent No. 1,930,445, illustrates the display of the three items of gas, tax, and total. That patent, Hughes & Vahle, patent No. 1,964,798, and Higgins, patent No. 1,915,127, show the use of a removable frame for holding display strips and books. Storage space for the display cards or strips that are not in use is illustrated by Hughes & Vahle, patent No. 1,964,798. While the cards being displayed are also held in the same space, the storage function was described in the specification. Martin & Schwartz made channels extra deep for the purpose of storing cards not in use. Of the patents above cited only Rohlfes was considered by the Patent Office.

Patentability in a combination of which all parts are old requires the production of a new and useful result or an old result in a new way, or an old result in a more advantageous way. The result must be the result of the combination, not a mere aggregation of several results each the complete product of one of the combined elements. Grinnell Washing Machine Co. v. E. E. Johnson Co., 247 U. S. 426, 38 S. Ct. 547, 62 L. Ed. 1196; Reckendorfer v. Faber, 92 U. S. 347, 23 L. Ed. 719; Hailes v. Van Wormer, 20 Wall. (87 U. S.) 353, 22 L. Ed. 241; E. Fredericks, Inc., v. Eugene, Ltd. (C. C. A.) 3 F.(2d) 543; Altoona Publix Theatres, Inc., v. American Tri-Ergon Corp. (C. C. A.) 72 F.(2d) 53; In re Hueber (Cust. & Pat. App.) 70 F.(2d) 906. The results claimed by the plaintiff for its combination are: (1) That it is universal in that it can show, over a wide range, price, tax, and total, even though each is subdivided into fractions of cents; and (2) self-contained in that it does not require the use of anything outside of the sign itself. The second result claimed is not a new result, nor is it reached by a new method. The signs covered by patents to Gildemeyer, Ringler, Rohlfes, Soesman are self-contained and are self-contained by use of the folded paper strips. Although those signs had no extra cards or strips which required storage space, Hughes & Vahle and Martin & Schwartz developed signs in which it was necessary to store extra cards. They met this problem and developed signs which were self-contained over a limited range. Plaintiff's device increased the range of the sign by making it unnecessary to store any cards except the extra total indicating strips. This made the sign self-contained over a wider range. An improvement, which affects only the degree of efficiency of a previous structure, does not amount to invention. French v. Carter, 137 U. S. 239, 11 S. Ct. 90, 34 L. Ed. 664; Guidet v. Brooklyn, 105 U. S. 550, 26 L. Ed. 1106; Caverly v. Deere (C. C.) 52 F. 758. This principle compels the conclusion that invention did not reside in the widening of the range of the sign. The same principle applied to the claim that the plaintiff's sign is universal results in a similar conclusion that the term universal is used in a relative sense, the extent of universality being dependent upon the number of strips which must be stored, and that merely extending this quality of the sign does not amount to invention.

The only novelty then in plaintiff's device is the use of three rows of folded display strips so as to show separately the price of gasoline, the tax, and the combined total. The use of three rows of display strips is no more than duplication, which is not patentable unless some new mode of operation or a new unitary result is produced. Dunbar v. Meyers, 94 U. S. 187, 24 L. Ed. 34; Slawson v. Grand Street, P. P. & F. R. Co., 107 U. S. 649, 653, 2 S. Ct. 663, 27 L. Ed. 576. Such a display may be compared with the illustration by Gildemeyer

of several names being listed one below another, and is quite like a display of three separate prices. No new result is reached by reason of the combination. Greater convenience and economy are not sufficient to give patentability to a combination of old elements where no new result is produced as the result of the combination. Grinnell Washing Machine Co. v. E. E. Johnson Co., supra. I am not unmindful that invention may reside in simplicity, Expanded Metal Co. v. Bradford, 214 U. S. 366, 29 S. Ct. 652, 53 L. Ed. 1034; Mahony v. Malcom (C. C. A.) 143 F. 124; Star Brass Works v. General Electric Co. (C. C. A.) 111 F. 398; or in applying a principle known to another art, Rainear v. Western Tube Co. (C. C. A.) 159 F. 431; or that patentability may lie in correcting the difficulties in an existing structure, Kurtz v. Belle Hat Lining Co. (C. C. A.) 280 F. 277; Miehle Printing Press & Mfg. Co. v. Whitlock Printing Press & Mfg. Co. (C. C. A.) 223 F. 647.

I do not find in this combination of elements any action of the elements upon each other or upon their common object whereby they perform any additional functions. Each element remains unchanged in function and effect. It therefore appears that the combination in question does not amount to invention, and the claims at issue are invalid.

▉ Defendant's final point is that the plaintiff's petition to "make special" its application, that is, to procure immediate consideration, misrepresented material facts, and the plaintiff is not entitled to enforce the rights it procured, because it stands before the court with unclean hands. Specifically, defendant claims that the plaintiff secured the grant of the patent by reason of an intended incomplete examination of the prior art. Plaintiff's affidavits on its application to "make special" stated that the plaintiff had money available to start immediate manufacture of a large number of the signs if the patent were granted and that a search had been made of the patent records by an employee of plaintiff's counsel, and that after study of the patents found by the search he was of the opinion that the claims were patentable.

On the facts produced there is nothing to show that the application in question was not given proper consideration by the examiner in the Patent Office. This court cannot presume that the Examiner failed to do his duty. In fact, the presumption is that the examination was properly made and that the patent was properly issued. All that defendant has shown is that the application was considered in advance of its regular term. This is far from proving that the patent was granted on an incomplete examination of the patent records, which incomplete examination was intentionally secured by the plaintiff.

Findings of fact and conclusions of law may be submitted, and are to be a part of this opinion.