WILCE et al. v. BUSH TEMPLE OF MUSIC CO.*

(Circuit Court of Appeals, Seventh Circuit. October 4, 1904.)

No. 1,062.

1. PATENTS—INVENTION—FLOORING.

The Wilce & Burnham patent, No. 531,711, for an improved floor, in which the ends as well as the edges of the boards are united by a tongue and groove joint, the joinder being made "hit-or-miss," without reference to the joists, is void for lack of invention in view of the prior art, which disclosed both features of the alleged invention, which were merely brought together by the patentee.

---

* Rehearing denied January 3, 1905.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

Appeal from a decree dismissing a bill for infringement of letters patent No. 531,711 for flooring, granted to Thomas Wilce and John P. Burnham, January 1, 1895.

Appellants' bill for infringements of letters patent No. 531,711, Jan. 1, 1895, to Wilce and another, for improvements in flooring, was dismissed for want of equity.

The nature of the alleged invention is sufficiently described in the claims, which are as follows:

"(1) In a floor, the combination of the joists with long narrow flooring boards or strips of varying lengths laid there and jointed together at their meeting ends by interfitting integral tongues and grooves formed thereon, the separate flooring boards or strips thus jointed together at their meeting ends forming continuous strips or boards extending across the joists and resting thereon and secured thereto at intervals, the tongue-and-groove joints at the meeting ends of the boards in one such continuous strip, breaking joints with those in adjacent continuous strips, whereby the necessity of joining the boards over the joists and nailing each separate board or strip at each of its ends to a joist is obviated, substantially as specified.

"(2) The improved floor herein shown and described, comprising a series of supporting joists and a series of flooring boards of varying lengths, jointed together at their ends by interfitting integral tongues and grooves formed thereon and also at their sides by interfitting tongues and grooves, the separate flooring boards or strips thus jointed together at their ends forming continuous strips or boards extending across the joists and resting thereon and secured thereto at intervals, the tongue-and-groove joints at the meeting ends of the boards in one such continuous strip, breaking joints with those in adjacent continuous strips, whereby the necessity of joining the boards over the joists and nailing each separate board or strip at each of its ends to a joist is obviated, substantially as specified."

Lysander Hill and John W. Hill, for appellants.
Edward Rector and Charles E. Pickard, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

BAKER, Circuit Judge (after stating the facts). Down to quite recent times the usual way of putting flooring directly upon joists was this: The boards were tongued and grooved along the sides. The workman, having regard to knots or other defects and to the necessity of breaking joints properly with those of boards already laid, would saw off the particular board in hand at such a length that each end would extend to the middle of a joist. The floor, when laid, would then have to be smoothed of any unevenness at the joints.

The advantages of appellants' method over the above are very great. Knots and split ends may be cut out at the factory; and short pieces, say two feet, which formerly would have to be thrown aside as flooring, may now be used successfully. The joints in a strip clear across the floor may fall where they will so far as the location of the joists is concerned. The workmen need pay attention only to the proper breaking of the joints of that strip with the joints of the abutting strip. No cutting and fitting is required except where the floor meets the wall. When laid, the floor is smooth and even without further dressing. A saving of 10 per cent. in material and 30 to 50 per cent. in labor is effected.

If appellants, as the file wrapper and contents show they and the Patent Office believed to be the case, took the step across the intervening gap, the merits of their patent might not be successfully assailed. But the record belies the premise.

The development was this: First. The old method of end-butting a joint over a joist. Second. The desirability of tonguing and grooving the ends to make a better joint than end-butting. This was shown in prior standard publications on joinery. The result was to furnish a tighter joint. The particular reason advanced why end-tonguing was superior to end-butting was that the joint would better keep out air and water. But of course the disclosure carried with it all the necessarily resulting advantages, including the prevention of warping at the ends of the boards, which was likely to happen with end-butted joints. The authors of these publications did not reach the idea of "hit-or-miss" joints irrespective of the location of the joists, but required the joints to be at the joists. Third. The idea of the "hit-or-miss" joints irrespective of the location of the joists. Meyer produced at his factory and sent forth in bundles ready for immediate use without cutting and fitting except next to the walls, hardwood flooring strips, tongued and grooved on the sides, carefully and accurately end-butted at the factory, and smoothed and planed so that the floor when laid would need no further dressing. Knots and split ends were cut out in the making; and the strips were of such varying length, from two feet up, as could be cut advantageously from the particular timber in hand. The flooring was designed to be laid, and was laid and used, on the "hit-or-miss" plan, with the resulting saving in material and labor that appears in appellants' method. Fourth. Appellants' substitution in the Meyer flooring of end-tonguing for end-butting.

Meyer disclosed the "hit-or-miss" plan for joints. The writers on joinery showed how a better joint could be made by substituting end-tonguing for end-butting. Appellants' selection among known means, though increasing the degree of efficiency, did not rise to the dignity of independent invention. Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 20 Sup. Ct. 708, 44 L. Ed. 856; Lovell Mfg. Co. v. Cary, 147 U. S. 623, 13 Sup. Ct. 472, 37 L. Ed. 307; Hollister v. Benedict Co., 113 U. S. 73, 5 Sup. Ct. 717, 28 L. Ed. 901; Atlantic Works v. Brady, 107 U. S. 199, 2 Sup. Ct. 225, 27 L. Ed. 438; Wisconsin Compressed Air House Cleaning Co. v. American Compressed Air Cleaning Co., 125 Fed. 761, 60 C. C. A. 529.

The decree is affirmed.