AMERICAN CAN CO. v. MORRIS et al.

(Circuit Court of Appeals, Seventh Circuit. October 3, 1905.)

No. 1,156.

PATENTS—INVENTION—LOCK-SEAM RIP-STRIP CANS.

The Norton patent, No. 539,366, and the McDonald patent, No. 543,347, each for a lock-seam can having a rip-strip, are void, both for lack of invention and for prior use of the device by another in this country.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

The appellant unsuccessfully prosecuted a suit to enjoin the infringement of patent No. 539,366, May 14, 1895, to Norton, and patent No. 543,347, July 23, 1895, to McDonald.

Norton's claim is as follows: "In a sheet metal can the can body B having interlocked edge folds or hooks, $b^1$, $b^2$, said edge fold or hook, $b^1$, having cuts or notches $b^3$, $b^3$, and an integral tongue-tearing strip, C, extending around the can body, the tongue of said tearing strip projecting between the notches or cuts, $b^3$, $b^3$, in said edge fold or hook, $b^1$, substantially as specified."

The McDonald claims said to be infringed are these:

(1) A lock-seamed can body having a circumferential detachable strip which extends across the locked seam and terminates in an integral free tongue projecting from the external fold of the seam.

(2) A lock-seamed can body having a circumferential detachable strip extending across the locked seam and terminating in an integral free tongue proceeding from the external fold of the seam at a point between the lateral limits of said fold.

(3) The can body blank or sheet described having a detachable strip provided with a tongue, $A^1$, projecting beyond the retracted edge, a, of the blank and laterally separated from the sheet at its base by slits, $a^1$, whereby, when the blank is lock-seamed, as set forth, the tongue proceeds from the external fold of the seam.

(4) The can body blank or sheet described having a detachable strip provided with a tongue, $A^1$, projecting beyond the retracted edge, a, of the blank and laterally separated from the sheet at its base by a slit or slits, $a^1$, deeper than the width of the fold, a, whereby, when the blank is lock-seamed, as set forth, the tongue proceeds from the external fold of the seam between the lateral limits of said fold.

The appellees make and use the very structure of these patents, so that there is no question of infringement if the patents are valid.

The other facts that are necessary to be considered are stated in the opinion.

John W. Munday and Edmund Adcock, for appellant.

Chas. E. Pickard, for appellees.

Before BAKER and SEAMAN, Circuit Judges, and ANDERSON, District Judge.

BAKER, Circuit Judge (after stating the facts). The patents are for a lock-seam rip-strip can. The Norton application was filed December 5, 1892; the McDonald, January 25, 1893. The appellees contend that the McDonald patent is void in view of the Norton. The appellant claims that there is competent and sufficient evidence in the record to show that McDonald's alleged invention antedated Norton's, that the McDonald patent is generic, that the Norton is specific and embodies the best form of the structure, and that both patents may therefore stand. But to tarry here is needless, because the defenses invalidate either patent as fully as the other.

The record convinces us beyond a doubt that in February and March, 1892 (which was months earlier than the beginnings of either McDonald or Norton), Thomas Clare, foreman of the appellees' tin shop in their packing establishment at the Chicago stockyards, made and used 150 lock-seam rip-strip cans of the kind which the appellees are now making and using and which the appellant claims are infringements of the patents in suit. These 150 cans were sent as samples to the French govern-

ment in response to a request for cans of that character. But no commerce with the French government resulted. If it had, there probably would have been no hiatus in the appellees' manufacture and use of their lock-seam rip-strip cans. The break occurred, however, through the failure of the selling department and not through the fault or inefficiency of the tin shop, for the cans then produced were as completely perfected and operative as those of to-day, the very same cans. So Clare's work was final and was not an abandoned effort to produce a finished and efficacious structure. Section 4886 of the Revised Statutes [U. S. Comp. St. 1901, p. 3382] voids a patent for a thing that has been known or used by others in this country prior to the alleged invention. No clearer case for the application of the statute can be found in the books, we believe. Compare Brush v. Condit, 132 U. S. 39, 10 Sup. Ct. 1, 33 L. Ed. 251, and the cases cited in the notes to sections 71 and 72 of Walker on Patents.

The defense of noninvention was also established. Briefly, the development in can-making was this: The can with a lap-seam. Then, with a lock-seam. Next, the application of a rip-strip to a lap-seam can. Finally, the transfer of the rip-strip to the lock-seam can. Did the last require the exercise of the inventive faculty? In view of the prior art and the simplicity of can-making, the transfer would seem to be so obvious that the only difficulty to be apprehended would be how the can-maker or tinsmith or tinker, instantly upon a call for lock-seam rip-strip cans, could avoid doing exactly what was done. But the record does not leave the case to be judged by the ex post facto wisdom of the by-stander. Prior to 1892 there was no general demand in the packing industry for lock-seam rip-strip cans, which inventors had long been struggling to meet and without success, like the demand for flying-machines and rotary engines. In January, 1892, the French government sent to the appellees a specification, on which to make bids, in which lock-seam rip-strip cans were called for, but without any suggestion as to how they should be or could be made. Clare at once produced the structure which the appellees are now using. The record does not directly show that the demand of the French government's specification became known to the other packers and can-makers in Chicago immediately or within a few months. But that such was the case seems to be a fair inference from the fact that within a few months three other Chicago men made lock-seam rip-strip cans. These were: McDonald, who was then the superintendent of Armour's can shop; Norton, a member of a firm of can-makers; and Zimmerman, an officer in a corporate can-making establishment. That this was not a conjunction of luminaries in the firmament of invention, but was merely the simultaneous response of ordinarily skilled workmen to a problem that was really self-answering as soon as presented, the appellees have proved to our satisfaction by showing that every tinsmith to whom the question has been presented, without hint, suggestion, aid, or knowledge beyond the art as it existed prior to 1892, produced at once, without hesitation or experiment, the lock-seam rip-strip can of the patents in suit. We think it clear that the patents are void for want of invention. Wilce v. Bush

Temple of Music, 134 Fed. 389, 67 C. C. A. 371, and the cases therein cited.

The appellant, admitting now that the means were obvious and within the instant apprehension and application of the ordinary workman (contrary to the position taken in the Patent Office, where it was insisted that a high order of invention was required to conceive of the means of combining in a can body a rip-strip and a lock-seam), advances the contention that invention lay in perceiving that, if the structure which was obvious to the skilled mechanic were made by automatic machinery, the heavy bumpers would compress the lock-seam without so hardening the stock at the base of the rip-strip tongue as to cause it to break when being wound around the opening key, and the soldering machines would make a tight joint under the tongue where the seam is of the lap type and only half the width of a "standard" lap-seam. It is enough to observe that the patents are for the structure, not for methods of making it; and that the patents, if valid, would be infringed by any lock-seam rip-strip can, irrespective of the tools used, or the width of seams, or the quantity of solder required to make a tight joint. Greist Mfg. Co. v. Parsons, 125 Fed. 116, 60 C. C. A. 428.

The decree is affirmed.