## NEUREUTHER v. MINERAL POINT ZINC CO.

(Circuit Court of Appeals, Seventh Circuit. January 20, 1910. Petition for Rehearing Denied June 10, 1910.)

No. 1,627.

1. PATENTS (§ 16*)—INVENTION—NATURE OF PATENTABLE INVENTION.

A mere carrying forward or new or more extended application of the original thought, a change only in form, proportions, or degree, the substitution of equivalents doing substantially the same thing in the same way by substantially the same means with better results, is not such invention as will sustain a patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 15; Dec. Dig. § 16.*]

2. PATENTS (§ 328*)—INVENTION—REGENERATIVE RETORT—HEATING FURNACES.

The Neureuther patent, No. 666,390, for a regenerative retort-heating furnace, is for a zinc-smelting furnace differing from the Siemens furnace of the prior art only by increasing the number of ports in the combustion-chamber from one to three and also the number of retorts, is void for lack of patentable invention, especially in view of the building and use by the patentee for several years before the application was filed of two-port furnaces.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

In Equity. Suit by Charles F. Neureuther against the Mineral

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Point Zinc Company. Decree for defendant, and complainant appeals. Affirmed.

The appellant, as patentee and owner of letters patent No. 666,390, filed his bill against the appellee to enjoin an alleged infringement of claims in the patent; and upon final hearing of the issues the bill was dismissed for want of equity. This appeal is from the decree thereupon.

The patent is entitled an "Improvement in Regenerative Retort-Heating Furnaces"; was issued January 22, 1901, on an application filed August 1, 1900, and the objects are thus stated:

"My invention relates to regenerative furnaces for heating zinc-distilling retorts and other like retort-furnaces; its object being to provide a means in such a furnace for the higher and more even heating of the retorts, and therefore the more even distillation of the material contained within the retort and greater proportionate recovery of zinc or other substance from the ore or other material under treatment. The difficulty in the ordinary regenerative zinc-distilling furnaces has been that the zinc ore contained in the upper tier or tiers of retorts has not been as highly heated as that contained in the lower tier or tiers thereof, so that the time required for distilling the zinc from the charge has been longer than desirable, and there was liability of some zinc remaining in the ore. By the present invention the retorts within the chambers of these regenerative furnaces can be more highly and evenly heated, and therefore the more rapid and perfect distillation of the zinc or other vapor from the charge contained in the retort be obtained." Also this further statement: "I also find it practicable to employ at least one more tier of retorts in the furnace as compared with the regenerative furnaces in use prior to my invention and to heat the same without appreciable increase in fuel, so increasing the output and reducing the cost of distillation."

The drawing illustrating the invention is as follows:

The following is the description in the specification:

"In the furnace illustrated the regenerators 1, 2, 3, and 4 are located under the combustion-chamber, 5, and this construction, is considered the more desirable, because the flues enter the center instead of the ends of the combustion-chamber. The combustion-chamber, 5, is formed of the side walls, which are provided with cast-iron frames comprising the vertical plates, 6, and horizontal plates, 7, supported in any suitable way and held in place by the buckstaves, 8, which buckstaves also support the roof, 9. Extending up within the combustion-chamber, 5, is the central division-wall, 10, which is provided with ledges, 11, on which the inner ends of the retorts, 12, rest, the outer ends of the retorts resting upon the horizontal plates, 7, above referred to. This division-wall, 10, extends up toward the roof, and so divides the combustion-chamber, 5, into two compartments, 13 and 14, which communicate with each other above the division-wall, and, as shown in the drawing, each compartment contains five tiers of retorts, 12, such retorts extending up close to the roof, 5.

As shown in the drawing, the furnace is provided on each side of the central wall, 15, with both gas and air regenerators, having the air-regenerator, 1, and gas-regenerator, 2, on one side thereof, and the air-regenerator, 4, and gas regenerator, 3, on the other side thereof, these regenerators leading through the regular pits to the ordinary reversing valves, which are not shown. A series of flues, 18, connected alternately with the air and gas regenerators on one side of the furnace, extend upwardly on one side of the center of the partition-wall, 10, and a similar series of flues, 19, connected alternately with the air and gas regenerators on the other side of the furnace, extend upwardly on the other side of the center of said partition-wall. The flues, 18, lead through the ports or opening, 20, into the base of the combustion-chamber, 13, and then extend upwardly within the division-wall, 10, toward the upper end thereof, and are provided with the ports, 22 and 23, opening into the compartment, 13, of the combustion-chamber at different heights and among the tiers of retorts, as shown, and acting to carry the gas or the air within such flue toward the upper end of the chamber before it passes into and forms combustion within the same. In the same manner the flues, 19, lead through the ports or openings, 21, into the base of the combustion-chamber, 14, and then pass upwardly within the division-wall and open by ports, 24 and 25, at different heights into the compartment, 14, and among the tiers of retorts in such compartment. It is to be noted that the ports, 20 and 21, are of greater area than the ports above them. They are so constructed, because it is desired to throw the main volume of gas and air and the flame and heat from the combustion thereof into the lower part of the compartment to circulate in the open space, 26, before rising among the retorts, the heat being supplemented by the combustion of the gas and air entering at different heights, as above described, and economy of fuel being thus obtained. The lower portion of the division-wall, 10, is made sufficiently thick to inclose and protect the flues, 18 and 19, and their ports; but the upper part, 27, thereof is made of less thickness, as shown, and this provides for the use of longer retorts in the upper part of the furnace.

"The retorts illustrated are the ordinary zinc-distilling retorts, which are usually cylindrical in cross-section, closed at one end, as shown, and carrying at the other end the nozzles or condensers, 28, the spaces around such retorts and within the frames, 8, being then closed by fire-clay or any other like way, so as to seal the retorts and the inner ends of the nozzles in the furnace-wall. Beyond the nozzles metal fume-collectors, 29, may be employed, if necessary. It is evident, however, that the arrangement of the retorts in the furnace will depend upon the material under treatment, and the connections for the carrying off of the vapors, fumes, or gases may be arranged as found most suitable for the purpose."

The claims are:

"1. A retort-heating regenerative furnace having a combustion-chamber, a vertical wall extending upwardly into the same and dividing it into two compartments, and serving with the outer walls to support the tiers or rows of retorts, and regenerators communicating with the compartments of the combustion-chamber, each regenerator having a port entering the base of the com-

partment on one side of the division-wall, and flues extending upwardly from said ports within such division-wall and opening at different heights into the compartment, one set into one compartment, and the other set into the other compartment, substantially as set forth.

"2. A retort-heating regenerative furnace having a combustion-chamber, a vertical wall extending upwardly into the same and dividing it into two compartments, and serving with the outer walls to support the tiers or rows of retorts, and regenerators communicating with the compartments of the combustion-chamber, each regenerator having ports entering at the base of the compartment on one side of the division-wall, and flues extending upwardly from said ports within such division-wall and opening at different heights into the compartment, one set into one compartment, and the other set into the other compartment thereof, the ports opening into the base of the combustion-chamber being larger than the ports opening at different heights above the same, substantially as set forth."

For defenses, numerous prior patents are exhibited to prove that the alleged "invention was substantially anticipated by the prior art," and it is contended that the device "is destitute of patentable novelty"—in reference to which the controlling facts are stated in the opinion.

Charles C. Buell, for appellant.

Edward Rector, for appellee.

Before GROSSCUP, BAKER and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). The patent in suit, No. 666,390, was issued to the appellant January 22, 1901, for an "improvement in regenerative retort-heating furnaces," having special reference to zinc-smelting furnaces. In the light of the prior art, including the conceded facts of regenerative zinc-smelting furnaces in prior use for many years, the test of patentable novelty in the appellant's device rests on a single feature—disclosing a "three-port" form of such furnace, as distinguished from the "one-port" and "two-port" forms in prior use—with no serious complications of fact involved in the inquiry.

For recovery of metallic zinc, after treatment of the ore in a calcining kiln to drive off the sulphur, reduction or "distillation" in a furnace is the zinc-smelting provision of the patent device; and the improvement is in the way of saving loss of zinc which occurs in distillation, said to arise in escaping either volatilization or condensation. The furnaces employed for this zinc-smelting process have been of two different types: (a) The earlier, known as the Belgian direct-fired furnace; and (b) Siemens' gas regenerative retort-heating furnace, invented by Dr. Siemens and patented in British patent No. 1,575, May 21, 1869, as "improvements in calcining and smelting ores," etc.; and the type adopted for improvement in Neureuther's patent (No. 666,390 in suit) is Dr. Siemens' invention, which shows a single horizontal row of ports opening into each of the compartments of the furnace—corresponding to the lower ports (Nos. 20 and 21) of Neureuther's patent—known as the "one-port" furnace.

The patentee, Neureuther, is superintendent of the furnace department of the Illinois Zinc Company, at Peru, and has been such superintendent since 1869. In his plant Belgian furnaces were originally installed, but in 1877 he introduced a Siemens furnace, later installing two others of like one-port type—operated conjointly with their Belgians—each having three horizontal rows of retorts in each com-

partment (instead of four rows as shown in Siemens' patent drawing), which are heated by the combustion of air and gas admitted through the single rows of ports. These one-port furnaces are referred to in the record as furnaces Nos. 1, 2 and 3. In 1892, they installed an additional Siemens' type of furnace, provided with two horizontal rows of ports opening into each compartment (the upper ports half the size of the lower) and four rows of retorts instead of three—referred to as two-port furnace No. 4—and in 1893 a duplicate thereof was installed, called No. 5. Two of the one-port furnaces (2 and 3) were changed to two-port furnaces in 1894 and No. 1 was so changed in 1897—in each instance making four rows of retorts and two rows of ports on each side, increasing the number of retorts from 144 to 192. Thus five two-port furnaces were in operation (with the first one in use about seven years), when a sixth furnace was added in 1899, provided with a third row of ports and a fifth row of retorts (No. 6) which was the structure described in the present patent, for which Neureuther's application was filed August 1, 1900; and in reference to such structure, it may well be remarked that no deviation appears from the prior two-port form, except the additional rows of retorts and ports, of like size and form with the upper rows of the two-port furnace, together with raising the arch sufficiently for their accommodation. During 1900 and 1901 the five two-port furnaces were changed over by raising the arch and adding the fifth row of retorts and third row of ports, conforming to No. 6; and in 1903 a seventh three-port furnace was built, called No. 7.

Through the above-recited evolution of furnace building and trial, in the plant of the Illinois Zinc Company, Neureuther achieved superior results in the three-port form of furnace, as an improvement both on the original Siemens device and on his own two-port furnaces, after the latter had continued in practical operation for about seven years. The outcome of his efforts was an improved zinc-smelting furnace of the Siemens type, and its superiority over other forms of furnace, at least in economy of fuel and space, appears from the testimony. Were the new and useful qualities of the three-port furnace, therefore, the test of patentability, no difficulty would appear in upholding the patent; but invention is the test which must be applied, and for solution of that inquiry under the facts stated, we believe one rule to be well settled and applicable, namely: That "a mere carrying forward or new or more extended application of the original thought, a change only in form, proportions, or degree, the substitution of equivalents doing substantially the same thing in the same way by substantially the same means with better results, is not such invention as will sustain a patent." Smith v. Nichols, 21 Wall. 112, 119, 22 L. Ed. 566; 8 Notes U. S. Rep. 389; Wilce v. Bush Temple of Music Co., 134 Fed. 389, 391, 67 C. C. A. 371.

The disclosure of invention in this patent, beyond that of the Siemens patent, is stated in the appellant's brief to reside in the following statement of the specifications:

"Flues extending upwardly within such division-wall and opening at different heights into the combustion-chamber, one set into one compartment and the other set into the other compartment thereof, so that the gases and flame

will enter the combustion-chamber at the base of one compartment and at different points above the base within the mass of retorts."

And the contention is, in substance, that the heat was thus evenly distributed and utilized, greatly improving distillation in the retorts, and saving the overheating and breaking down of retorts under the prior methods.

While it satisfactorily appears, as we believe, that the one-port arrangement of the Siemens patent was insufficient for this desirable even distribution of the heat, and that additional ports, with additional height for the retort-heating chambers, tend to better distribution, we are of opinion that the problem thus presented was solved, except it may be in degree, by the two-port furnaces, which were installed and constantly used in the plant for a period of seven years prior to the patent device. If these changes of structure to that end amount to invention—in the light of numerous patents introduced showing like provision in other types of furnace—it became vested in the public through such use, and the above-stated rule governs alike whether the prior conception rests in the Siemens patent or in such public use. Smith v. Nichols, ante.

The only departure from the Siemens patent in either of these new forms of furnace introduced by the appellant, as before stated, is in the combustion-chamber, making additional ports and retorts, with corresponding increase in the height of the chamber; and both departed alike, except in degree. The testimony in reference to the practical operation of the two-port and three-port furnaces respectively is convincing that both were substantial improvements over the primary device, and that the three-port is the superior form. It is not convincing, however, that the two-port furnaces were impracticable for the improvement sought, in better distribution of heat, nor that they failed to disclose the means to that end. The facts in evidence, showing both their length of actual service and efficiency, and their retention in service long after the three-port furnace had demonstrated its value, are more persuasive upon that issue than the oral criticisms which are now offered as to their defects, unsupported by other evidence. They clearly anticipate the above-stated claim of invention in the three-port device, and the multiple-port conception therein (1892) having become public property, was not patentable subject-matter in 1900, when the application was filed for a patent. The alleged improvement then made was the expedient of the mechanic, carrying out the original conception as exemplified by the testimony of appellant's construction engineer, that the change was made "simply to run the furnace more economically; that is, to get more retorts on the same ground, the same space." It provided 720 retorts in No. 6 and 800 in No. 7, whereas, each of the first three two-port furnaces had only 384 retorts.

We are of opinion, therefore, that the grant of a patent was unauthorized, and the decree accordingly is affirmed.