### SPIRELLA CO. v. NUBONE CORSET CO. et al.

#### (Circuit Court of Appeals, Third Circuit. August 27, 1914.)

#### No. 1827.

1. PATENTS (§ 328*)—VALIDITY—CORSET STAYS.

The Beeman patent, No. 1,002,488, for a method of making garment stays, held void for lack of patentable novelty in view of the disclosures of the prior art.

2. PATENTS (§ 16*)—INVENTION—CARRYING FORWARD OLD IDEA.

The mere carrying forward of an old idea and doing what had been done before in substantially the same way, but with possibly better results, is a change not involving invention.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 14, 15; Dec. Dig. § 16.*]

Appeal from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Suit in equity by the Spirella Company against the NuBone Corset Company, a New Jersey corporation, the NuBone Corset Company, a Pennsylvania corporation, George H. Barlow, and Joseph J. Desmond. Decree for defendants, and complainant appeals. Affirmed.

Frederick W. Winter, of Pittsburgh, Pa., and Charles Neave, of New York City, for appellant.

J. C. Sturgeon, of Erie, Pa., and Joseph C. Fraley, of Philadelphia, Pa., for appellees.

Before BUFFINGTON and McPHERSON, Circuit Judges, and WITMER, District Judge.

WITMER, District Judge. This bill in equity charges the defendants with infringement of letters patent No. 1,002,488, granted September 5, 1911, on application filed November 30, 1908, to complainant, as assignee of Marcus M. Beeman, for improvement in method of making garment stays. The usual defenses, denial of infringement, averments of prior use of the alleged invention, and invalidity of the letters patent, have been interposed.

The parties herein are rival manufacturers of corset stays and corsets, and have before been in this court in a suit wherein these same complainants contended that the corset stay made by defendants in accordance with letters patent No. 868,763, granted to John R. Dean, October 22, 1907, for a corset stay made on the John R. Dean Stay Making Machine, patented December 6, 1910, to No. 977,515 on his application filed January 16, 1908, infringed letters patent No. 507,- 875, granted to Marcus M. Beeman, October 31, 1893, for dress stay, and letters patent No. 645,444 granted to John P. F. White and Samuel S. Rider, March 13, 1900, for a corset stay stiffener, both of which patents were then owned by the complainant. A decision was therein rendered ordering a decree to be entered against the complainant dismissing the bill. 183 Fed. 984.

The alleged infringement of the present suit consists in the making on the Dean machine the Dean corset stay. It will be noted that the Dean machine patent antedates the application of the patent in suit, but it is said that stays were not commercially made on it until some time thereafter, and that the same was also anticipated by the Beeman improvement method. Be this as it may, in view of the conclusion reached it will not be necessary to discuss this aspect of the case.

[1] The patent in suit is for a method of making wire garment stays, the essential features of which consist in imparting to the wire, during the manufacture of the stay, a twist or torsional strain in order to increase the resistance of the stay against flatwise bending stresses in one direction as compared with the other, and also to increase the resiliency of the stay and its ability to resist a permanent set under bending stresses, as a result of which a stay of given strength can be formed of lighter wire than similar stays before manufactured.

The first claim of the patent only is here involved. This specifies the method in connection with a particular form of wire stay, to wit, one in which the wire is bent at intervals in opposite directions to form curved edge-forming loops or eyes and transverse connecting portions.

Claim 1 refers to the method as:

"The method of forming garment stays consisting in bending wire at intervals and alternately in opposite directions to form curved edge-forming loops or eyes and transverse connecting portions, and while so bending the edge-forming loops or eyes imparting a twist to the wire and thereby placing the same under initial torsional strain."

It will be noted that the form of stay to which the claim relates is one having a zigzag formation of the wire, as distinguished from one having a spiral formation or in which the curve runs continuously in the same direction. It is said that, if in this zigzag form of wire stay the wire is given a twist in the transverse portions or crossings of the stay, this will impart rigidity and resiliency to the stay as a whole when bent in one direction, and the patent in suit is for a method for producing this form of stay with a twist placing the wire under initial torsional strain. The patentee says that the bending may be performed in any suitable way and shows how it may be carried out by mechanical means, as follows:

FIG. 1.

FIG. 4.

FIG. 5.

FIG. 3.

FIG. 2.

"As shown, the wire is taken by a finger *2* and bent around a pin *3* to form a loop or eye *4*, and is carried by said finger across the stay, as at *5*, and carried over another pin *6* which then rises, and the wire is caught by the opposite finger *7* and bent around said pin *6* to form a loop or eye *8* on the opposite side of the stay, and is then again carried across the stay, as at *9*, and depressed and carried underneath the previously formed loop *4*, as at *10*. The bending as shown is performed by the bending fingers *2* and *7* having on their ends sloping or inclined lips *12* which serve to press the wire downwardly while bending the same around one of the pins and carrying the same across the stay. The unformed portion of the wire is held by the guide *13* inclined downwardly from the plane of the formed portion of the stay, as shown at *14*, Fig. 2, and consequently the portion of the stay forming the loops or eyes is formed on a spiral running upwardly, relatively speaking, while the transverse connecting portions are on a spiral running downwardly, due to the action of the inclined lips *12* of the bending fingers which force the wire underneath a previously formed loop or eye. The consequence is that the wire is twisted at the loops, as indicated by the spiral shade lines *15*, Figs 1 and 4, and is thereby put under an initial torsional strain. The loops of the fabricated portion of the wire are inclined or tilted from the plane of the stay, as shown in Fig. 2, while the unformed portion of the wire stands at the opposite angle or inclination from the plane of the stay. Consequently when the wire is carried across from side to side and

the eye is tilted to bring it to the inclined position, a certain amount of twist is necessarily given to the wire. This places the wire under an initial torsional strain. This manner of forming the stays, that is, by holding the unformed portion of the wire at an incline to the formed portion of the stay, and carrying the wire across the stay and simultaneously bending it down, results in depressing the edges of the loops or eyes below the normal plane of the stay, so that the finished stay is somewhat concave on its lower side, as shown at *16*, Fig. 5."

The bended loops in the inclined position relative to the plane of the stay, so that each loop may slightly overlap the next one and the series of loops along either edge will have the shingled arrangement, in ribbon form somewhat concave on its lower side, it will be observed, is the characteristic feature of the stay described. It is obvious that whenever wire is bent to this form the same result will follow, to wit, a twisted condition of the wire. Now, therefore, if instrumentalities of the character shown in the Beeman method patent were formerly used, as contended by the defendants, for the manufacture of garment stays, the method covered in the patent was necessarily practiced. It appears that dress stays made from wire bent substantially to the form shown in the patent under consideration with alternating reversely bent loops along edge connected by cross-portions, with the loops inclined to the plane of the stay and overlapped and shingled, were known long prior to this patent. It is useless to note any others since Beeman's own patent of stay, heretofore noted, is the best embodiment of the features involved. The wire is bent to the same form as that shown in his method patent, and, while an edge view is not shown in the earlier patent corresponding to Fig. 4 of the patent in suit, it is obvious from the plain view, as well as from the description of the construction, that the loops overlapped one another at each edge of the strip, necessarily inclining them to the general plane of the strip, bringing them into the shingled relation to one another as represented.

**M. M. Beeman Dress Stay.**

That these stays were manufactured, whereby the method of imparting the twist to the wire resulting in the "initial torsional twist and set" claimed in the patent was necessarily involved, has been sufficiently evidenced by the product from a machine patented to manufacture these stays. This machine was invented by Mr. Mallett, patented long before the patent in suit, and discloses the instrumentalities for bending the wire to the form shown by both of Beeman's patents, which sufficiently appears from an inspection of the following drawings:

F. W. Mallett Machine for Forming Metallic Stays for Garments.

Fig. 4

. The operation of the instrumentalities in bending the wire into form of a stay is described by the patentee in such a manner that there can hardly be any line of distinction drawn between the method of Beeman and the usual result of the operation of the Mallett machine. In the specifications the patentee says:

"The machine being then set in motion causes the finger *d* to swing in across the end of the bar *a* and push the wire inward over the front pin *b* of the depressed bar *ax*, where it leaves the wire in the shape of a partly formed loop, while the finger *d* swings back out of the way of the bar *ax*, which then rises and causes its front pin to enter into the said partly formed loop. Then the bar *a* descends and releases the wire from the front pin of said bar. Then the finger *dx* swings in and pushes the wire over the front pin of the depressed bar *a*, which then rises and causes its front pin to catch in the partly formed loop of the wire over said bar. This completes the first loop on the bar *a*. The second loop is formed by the action of the finger *d*. In the release of the loop from the front pin *b* the wire is allowed to slip longitudinally and causes the released loop to be caught on the rear pin *bx*, and thus form the loops contiguously side by side and slightly overlapping. The continuation of the alternate action of the bars and fingers forms a metallic band composed of correspondingly shaped loops disposed alternately in reversed positions. The notches *d'* of the fingers *d dx* receiving the wire through them and being slightly below the top of the raised bar causes the fingers to bend the wire down across the inner edges of the bars, and thus produce a transverse convexity on the underside of the metallic band formed from the wire. This convexity partly stiffens the said band on one of its sides and increases the flexibility on the opposite side. This feature is especially desirable when the described metallic band is to be used for stays."

Complainants admit the use of Mallett's machine as an instrument in carrying out their process in the manufacture of stays, but they argue that they have only been able to impart the twist of the wire resulting in "initial torsional strain and set" by readjustment of the machine, and they point to the curling up of the ribbon-like stay after passing through the bending process as an evidence of the torsional strain imposed. It will, however, be noted that the Mallett patent also speaks of this curling of the wire, and indeed the machine is provided with means to flatten or straighten out the fabric after it is bent into form. While the adjustment of the machine may add some additional twist to the wire in course of manufacture, it is of such little consequence that it would not of itself have been sufficient to suggest the happy thought of the initial torsional twist and set, which has been made the subject of this patent. It is beyond doubt that in the prior use of the Mallett machine, in fabricating the stay some twist was imparted to the wire, since it is not possible to weave wire into the form of a helix without imparting some twist to it. All that can, under the most favorable view of the case, be conceded to the complainant, is that by adjustment of the machine operating as before they may have improved to some degree the stay manufactured by placing the wire under an indefinite degree of additional torsional twist.

[2] However, the simple carrying forward of the old idea, and doing what had been done before, in substantially the same way, but with possible better results, is a change not involving invention. Guidet v. Brooklyn, 105 U. S. 550, 26 L. Ed. 1106. That the slight additional twist imparted by the further adjustment of the machine, and it will be noted that the machine was adjustably provided, does not rise to the dignity of invention is recognized in Torrey v. Hancock, 184 Fed. 61, 107 C. C. A. 79. There it is said that:

"Any changes made were in degree, proportion, or symmetry. The plow of his patent did the same thing in the same way, and by substantially the same means as before, and, although it produced better results, it did not

rise to the dignity of invention." Smith v. Nichols, 21 Wall. 112, 22 L. Ed. 566; Belding Mfg. Co. v. Corn Planter Co., 152 U. S. 100, 14 Sup. Ct. 492, 38 L. Ed. 370.

Supporting their contention that such change or adjustment constituted invention, counsel cited the Telephone Cases, 126 U. S. 1, 8 Sup. Ct. 778, 31 L. Ed. 863. But it will be noted that the subject there discussed differs from all of the essential features of the case in hand. The adjusting of the Mallett machine was used and practiced in its operation to produce the stay manufactured while the adjusting mechanism of the Reis telephone which might have been used to bring about certain new and useful results were not understood and could not be utilized by the inventor so as to transmit speech; hence discovery of their possibilities was held to be invention.

However, if the method of the patent had been to the aim at increasing the amount of twist by adjustment of the Mallett machine, it could likewise not be sustained for the reason that there is nothing in the drawings, specifications, or claim that imparts the necessary information to accomplish this result. Carefully considered, it is but a description of a well-known function, or result of the operation of an old stay making machine, and, without carrying the discussion any further, we think the court below was right in its conclusion that the method set forth in the patent is entirely devoid of novelty in view of the disclosure of the prior art, and the judgment will be affirmed.