## LUTEN v. ALLEN et al.

### (District Court, D. Kansas, First Division. February 27, 1918.)

### No. 196-N.

1. PATENTS ⚎313—SUITS FOR INFRINGEMENT—DISMISSAL OF BILL.

   When, from facts of which a court must take judicial notice, a claimed invention is not patentable, or when want of invention is apparent on the face of the patent, a bill for infringement based thereon must be dismissed.

2. EVIDENCE ⚎5(1), 9—SUITS FOR INFRINGEMENT—JUDICIAL NOTICE.

   In an infringement suit, the court will take judicial notice of (1) all matters of general scientific knowledge; (2) all matters in common use, and all matters of common knowledge; (3) such mechanical devices as are of common knowledge among all; and (4) the nature of a patented invention.

3. PATENTS ⚎328—INVENTION—METHOD OF REINFORCING CONCRETE BRIDGES.

   The Luten patent, No. 818,386, for method of reinforcing concrete arches in bridges, held void for lack of invention, as disclosing merely a change of place of old elements in combination, producing perhaps a better, but not a new, result, and involving only the ordinary skill of the mechanic.

In Equity. Suit by Daniel B. Luten against Arthur E. Allen, William S. Fulton, and Arthur E. Allen and William S. Fulton, partners doing business as Allen & Fulton. On motion to dismiss bill. Motion granted.

Vermilion, Evans, Carey & Lilliston, of Wichita, Kan., for complainant.

S. M. Brewster, Atty. Gen., S. N. Hawkes, Asst. Atty. Gen., and Robert Garver, Co. Atty., of Topeka, Kan., for respondent.

POLLOCK, District Judge. This is a suit by Daniel B. Luten to restrain the infringement of one of his many letters patent procured on the method of reinforcing concrete work employed in the construction of bridges, culverts, etc., and for an accounting. The letters patent involved in this suit are numbered 818,386, issued April 17, 1906. While the patent contains seven claims in all, but two of said claims, numbered 1 and 7, are involved in this controversy. These claims read as follows:

"1. An arch having imbedded therein a plurality of tension members passing alternately across the rib, said members being low at the crown and high at the haunches, and each of said members passing across the rib at different longitudinal points from the others, substantially as described."

"7. An arch having imbedded therein rods, bars, or other tension members in two or more series, following one face of the arch rib, thence across and following the other face of the rib; the points of crossing for the different series being angularly or laterally displaced with respect to each other, substantially as described."

The structure alleged to be an infringement of these claims was a bridge erected by defendants for Shawnee county, this state, known as "Joss Bridge," over Vassar creek, in said county.

Defendants have appeared, and move to dismiss the bill for want

---

⚎For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of equity appearing on the face of the record, arising out of the averments of the bill itself, together with the exhibits attached thereto or filed therewith, coupled with the information gained from that common knowledge of which courts will take judicial notice.

As this is but one of the many suits instituted in this court by plaintiff on patents involving like or similar matters, I am aided by voluminous printed briefs covering the entire range of the subject-matter. The sole controversy here presented is: Does the bill show the claims of the patent invalid for want of invention at the times the patent was applied for and issued?

It is to be noted from a reading, both claims of the patent involved pertain to the manner of reinforcing a concrete arch employed in the structure. The employment of arches of all kinds and natures for the purpose of thereby strengthening suspended portions of structures in compression was well known by all men and successfully used by the ancients, and at all times since. This is not disputed. Hence, nothing whatever new or novel in the employment of materials in construction or formation of an arch for the purpose of carrying weight in suspension is or can be claimed by plaintiff.

Again, the use of concrete as a building material was well known in the art of building ages before the adoption or use by plaintiff in his work of building done under his patents. Hence, nothing can be claimed by plaintiff as new or original in the quality of concrete, the ease with which it separates on low tension, or its ability to withstand extreme compression.

Again, the practice of employing in all forms steel or other metal rods, bars, strands, ropes, strips, woven mats, etc., in the reinforcement of concrete used in buildings of all kinds and character, for the purpose of preventing its separation when subjected to a pulling or tension force, was also well known to the trade and in the art of building long before the same was conceived or employed by plaintiff.

The only question here presented is this: Was the idea of the plaintiff in the employment of the form of a well-known figure (an arch) in the work of bridge construction, in the doing of which work a well-known and well-understood combination of materials, concrete in conjunction with reinforcing steel rods, an original and patentable method of construction arising solely from the fact the manner of the use made of the materials in combination produced a stronger structure, hence the better adapted to the purpose of carrying a load, including its own weight, than was the manner of combination of said materials by others long before employed in the work?

Now, I take it all matters of general scientific knowledge, such as arise out of the science of mathematics, the operation of natural laws, and other such matters, are comprehended within that class of facts of which courts will take judicial cognizance, when attention is thereto directed. From which it follows, if it may be said the claims in the patent here in controversy are invalid for want of invention, the court should sustain the motion to dismiss the bill, and obviate the necessity of incurring the expense and performing the labor of taking

proofs. Brown et al. v. Piper, 91 U. S. 37, 23 L. Ed. 200; Slawson v. Grand Street R. R. Co., 107 U. S. 649, 2 Sup. Ct. 663, 27 L. Ed. 576.

Hence, the decision of the motion presented involves two questions: (1) Of what do courts take judicial knowledge? (2) What constitutes invention, in such sense as to uphold a claim of patent?

[1] When these questions are answered, and the answers are applied to the claims of the patent in controversy, such application must determine the question raised by the motion; for it is quite well settled, when from the facts of which a court must take judicial notice a claimed invention is not patentable, a bill based on such patent must be dismissed, or, when want of invention is apparent on the face of the letters patent granted, the patent must be declared void and nonenforceable, notwithstanding the fact of its having been granted. Slawson v. Grand Street R. R. Co., supra; Torrent Co. v. Rodgers, 112 U. S. 659, 5 Sup. Ct. 501, 28 L. Ed. 872; Kaolatype Engraving Co. v. Hoke (C. C.) 30 Fed. 444; West v. Rae (C. C.) 33 Fed. 45.

[2] Now, it seems from authority courts will take judicial notice of the following, among other matters: (1) All matters of general scientific knowledge (Brown et al. v. Piper, supra; Slawson v. Grand Street R. R. Co., supra); (2) of all matters in common use and all matters of common knowledge (King v. Gallun, 109 U. S. 99, 3 Sup. Ct. 85, 27 L. Ed. 870; Terhune v. Phillips, 99 U. S. 592, 25 L. Ed. 293); (3) of such mechanical devices as are of common knowledge among all (Aron v. Manhattan Ry. Co. [C. C.] 26 Fed. 314; Knapp v. Benedict [C. C.] 26 Fed. 627); (4) of the nature of a patented invention (Kaolatype Engraving Co. v. Hoke, supra; Slawson v. Grand Street R. R. Co., supra).

Mr. Robinson in his work on Patents (section 77), says:

"Every invention contains two elements: (1) An idea conceived by the inventor; (2) an application of that idea to the production of a practical result. Neither of these elements is alone sufficient. An unapplied idea is not an invention. The application of an idea, not original with the person who applied it, is not an invention. The inventive act in reality consists of two acts—one mental, the conception of an idea; the other manual, the reduction of that idea to practice."

In Fuller v. Yentzer, 94 U. S. 288, 24 L. Ed. 103, Mr. Justice Clifford, delivering the opinion of the court, says:

"Valid letters patent undoubtedly may be granted for an invention which consists entirely in a new combination of old elements or ingredients, provided it appears that the new combination of the ingredients produces a new and useful result."

In Smith v. Nichols, 88 U. S. (21 Wall.) 112, 22 L. Ed. 566, it is said:

"A mere carrying forward, or new or more extended application, of the original thought, a change only in form, proportions, or degree, the substitution of equivalents, doing substantially the same thing in the same way, by substantially the same means, with better results, is not such invention as will sustain a patent."

In Penn. Railroad v. Locomotive Truck Co., 110 U. S. 490, 4 Sup. Ct. 220, 28 L. Ed. 222, it is said:

"The application of an old process or machine to a similar or analogous subject, with no change in the manner of application, and no result substantially distinct in its nature, will not sustain a patent, even if the new form of result has not before been contemplated."

In Phillips v. Detroit, 111 U. S. 604, 4 Sup. Ct. 580, 28 L. Ed. 532, it is said:

"No invention was required for the construction of the pavement described in the patent, and that it demanded only ordinary mechanical skill and judgment, and but a small degree of either."

In Reckendorfer v. Faber, 92 U. S. 347, 23 L. Ed. 719, it is said:

"The law requires more than a change of form, or juxtaposition of parts, or of the external arrangement of things, or of the order in which they are used, to give patentability."

In Hollister v. Benedict Manufacturing Co., 113 U. S. 59, 5 Sup. Ct. 717, 28 L. Ed. 901, it is said:

"All that remains to constitute the invention seems to us not to spring from that intuitive faculty of the mind, put forth in the search for new results, or new methods, creating what had not before existed, or bringing to light what lay hidden from vision, but, on the other hand, to be the suggestion of that common experience, which arose spontaneously and by a necessity of human reasoning, in the minds of those who had become acquainted with the circumstances with which they had to deal."

In Wollensak v. Sargent, 151 U. S. 221, 14 Sup. Ct. 291, 38 L. Ed. 137, it is said:

"The novelty must be a novelty in the means or mechanical device, and not in the use to which the combination is put."

In Spirella Co. v. Nubone Corset Co., 216 Fed. 898, 133 C. C. A. 102, it is said:

"The simple carrying forward of the old idea, and doing what has been done before in substantially the same way, but with possible better results, is a change not involving invention." Richards v. Chase Elevator Co., 158 U. S. 299, 15 Sup. Ct. 831, 39 L. Ed. 991; Neureuther v. Mineral Point Zinc Co., 179 Fed. 850, 103 C. C. A. 336.

In Siemund v. Enderlin (D. C.) 206 Fed. 283, it is said:

"Nor can it be held that an arrangement of the parts of a device (described in prior patents and used for a purpose and in a way shown in those patents, but, coupled with the skill of the operator, made to be effective only under certain conditions, which will produce results desirable under certain circumstances) can be patentable as a new invention, when the earlier patents show both an understanding of the possibility of these results, the existence of such an arrangement of parts and of the conditions produced, together with an understanding of what is necessary for a skilled operator to get these results, even though the reason assigned, or the explanation of the cause of the results themselves, be mistakenly stated and attributed to incorrect factors or parts in doing the work. * * * Nor is mere adjustment patentable."

In American Laundry M. Mfg. Co. v. Troy Laundry M. Co. (C. C.) 171 Fed. 870:

"If ordinary mechanical skill is adequate to make the selection and union, or combination, and no new idea is involved in the process, there is no patentable invention, however great the improvement."

[3] Now, is the question presented as to the best method or manner of placing steel bars or rods in reinforcing concrete arch, to give it strength to support weight, one capable of being definitely and certainly solved by the application thereto of well-known scientific principles, or must such question be worked out from experimental tests, involving many changes in manner and form of employment, until a happy (the best) form is chanced upon or discovered by the creative power of the mind, as contradistinguished from its ability to understand well-known and settled scientific principles?

From a study of the authorities I am of the opinion all the claims of the patent involved in this case disclose is a mere change of place of old elements in combination, producing perhaps a better, but in no sense a new, result; further, that any mechanic of ordinary skill in the doing of the work would have developed the method employed from out his understanding of such matters and in dealing with them. If this be true, as has been seen from the authorities above cited, the claims to the patent in dispute are invalid, and confer no monopoly of right in use upon the plaintiff, and the motion to dismiss must be sustained.

It is so ordered.