### S. STERNAU & CO., Inc., v. GEORGE BORGFELDT & CO.

(District Court, S. D. New York. December 18, 1918.)

1. PATENTS ⬅35—EVIDENCE OF INVENTION—COMMERCIAL SUCCESS.

Where commercial success may be accounted for on other grounds, and the patent in suit plays either no part or an inferior part in attaining such success, a court must be cautious in giving it weight in aid of the patent, or a broad construction of its claims.

2. PATENTS ⬅328—VALIDITY AND INFRINGEMENT—ALCOHOL LAMP.

The Ball patents, No. 1,222,571, for a container, and No. 1,237,453, for a combined lamp and stand, both relating to lamps for burning solid alcohol held void for lack of invention; also held not infringed, if conceded validity.

In Equity. Suit by S. Sternau & Co., Incorporated, against George Borgfeldt & Co., for infringement of the Ball patents, Nos. 1,222,571 and 1,237,453. Decree for defendant.

J. Edgar Bull and John Robert Taylor, both of New York City, for plaintiff.

Briesen & Schrenk, of New York City (Hans v. Briesen and Fred A. Klein, both of New York City, of counsel), for defendant.

MAYER, District Judge. The importance of the controversy, in respect of the patents in suit, lies in the remarkable commercial progress in the sale of containers and stands for solid alcohol. The patent features of the case are simple enough, and, but for an attractive commercial field, would probably invoke little attention. This commercial progress, however, properly requires a careful consideration of the subject-matter so that it may be understood that the result in this case is not arrived at merely because, on first glance, the patents are simple.

Plaintiff and defendant sell solidified alcohol to the public in convenient containers, which are fitted into or engaged with stands. These cans or containers are extensively used by the public for cooking or heating purposes, and thus furnish a small, compact, and

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

inexpensive means for those of the public who, for one purpose or another, wish to avoid the employment of more expensive or elaborate heating devices.

Prior to the time plaintiff embarked on this line of business, solid alcohol was well known as a fuel, certainly as far back as 1898. About 1901–1903, one Rossmann imported from abroad solid alcohol and a stove therefor, and attempted to exploit these articles commercially, but was not successful. The information as to his efforts is not sufficiently full to determine why he failed. His failure may have been due to lack of capital, or to an imperfect device, or to the fact that the public had not as yet become educated to the use of solid alcohol.

In April, 1913, a concern known as the Lava Heater Manufacturing Company placed upon the market a patent heater together with a solid alcohol. A substantial sum of money was spent for advertising this product, and in the fall of 1913 the business was taken over by the Ellenem Company upon a royalty basis. This last-named company manufactured and sold the heater and fuel, and conducted a substantial advertising and publicity campaign. The heater remained on the market from the spring of 1913 until the summer of 1915. Shortly after the Lava heater was introduced commercially, a device, with accompanying outfit, known as the "Home and Camp Cooker," was placed on the market in 1913 or 1914 by a concern which originally acted as sales agent for the Lava heater. Plaintiff entered the field in 1914, and soon captured the market as against the Lava heater and the "Home and Camp Cooker" device. Plaintiff first put out a single outfit, comprising a collapsible wire stand, a plain round can of solid alcohol, and a small tin boiler. This outfit sold for 50 cents. From this starting point plaintiff has developed its business to an extraordinary extent.

In examining, however, the history of plaintiff's efforts, it must be noted that while the plaintiff was still using plain cans—that is to say, cans without grooves—it sold well over a million of such cans. For a new venture, the plaintiff's solid alcohol business was a success practically from the start, and while the business of plaintiff has grown substantially as time has gone on and progress has been contemporaneous with changes in the form in which its solid alcohol was marketed, yet the case is not one where it can be said that plaintiff's commercial success has necessarily been due to the later device or form in which this solid alcohol has been placed before the public.

[1] From the evidence it is apparent that Mr. Sternau and Mr. Strassburger, of plaintiff company, were men of marked business ability. They appreciated the possibilities of solid alcohol, and, through competent manufacturing methods and able salesmanship, have made their goods known practically throughout the country. The rule that commercial success will be resorted to as an aid in resolving doubt as to patentability, and also will be considered in connection with a liberal or narrow construction of claims, has been constantly growing in favor. When availed of in cases of simple invention, the rule often proves of value; but in every case it is vital that

the court must be satisfied that the commercial success can be directly traced to the employment of the device of the patent. It may very well be that extensive and good advertising and good salesmanship may contribute to the result, and yet not prevent the conclusion that the commercial success is due to the exploitation of articles made under the patent in suit. Where, however, the commercial success may be well accounted for on other grounds, and the patent in suit plays either no part or an inferior part in attaining such success, then the court must be cautious not to be misled by what might seem prima facie to be commercial utility.

If, for the purpose of illustration, plaintiff's ability in marketing the goods and the education of the public to the use of solid alcohol were laid aside, yet in this case the large previous success in marketing a comparatively new article with the plain or ungrooved containers negatives the idea that commercial success can be resorted to either in aid of the patent or of a broad interpretation of the claims.

We come, thus, to a consideration of the patents for what they set forth in the grant, tested, in addition, by the disclosures of the prior art.

The groove patent:

"This invention," the patentee stated, "relates to improvements in containers or stoves for containing and burning solid fuel and has for its objects:

"First. To combine a stove and container, said container being adapted to be used in different situations with stands or supports.

"Second. To reduce the expense of manufacture.

"Third. To prevent leakage due to expansion or contraction of the contents of the lamp."

And he claimed:

"As a new article of manufacture, a container adapted to carry a fuel and to be detachably secured to a suitable holder to constitute therewith a lamp, said container being formed of a material and constructed to resist damage thereof by heat, and a cover for normally inclosing the contents of the container, adapted to be opened to expose a flame opening, the body of the container being contoured to present approximately longitudinally disposed internal and external relatively raised and depressed portions, adapted to allow for expansion and contraction and constituting in part holder engaging means."

The testimony excludes the argument that there is any merit in the provision in reference to the adaptation "to allow for expansion and contraction." Simply stated, then, what the patent is for is a series of grooves whose purpose is to engage in safe and locking manner with a stand.

It may very well be that to make such grooves in suitable manner requires the skill of a capable mechanic or artisan in the course of actual manufacture; but, obviously, patentability is not concerned with skill of that character. It seems to me hardly necessary to resort to the prior art to hold that the depression in a container taking the form of a groove, does not involve inventive thought. Once the desire is presented to fit an article to another, it is, in my opinion, a very natural and easy step for a man to conclude to make grooves so positioned that they will fit with the device sought to be engaged.

Indeed, I gather from the testimony of Mr. Ball, the alleged inventor, who is skilled in arts having to do with small appliances, that he found no great difficulty in solving what is called a problem. It is sufficient to refer to Eichelkraut, No. 1,050,113, and Hamm, No. 1,079,124, to demonstrate how little possibility there was of invention, if, indeed, it can be said that invention may be predicated upon a patent of this character. In any event, the very most to which plaintiff would be entitled would be the precise groove found in its container, and that precise groove is not infringed. I think, however, it is desirable not to be doubtful on the point, and therefore I hold the patent void for lack of invention.

The combination patent:

"My invention," the patentee stated, "relates to a collapsible stand and a lamp supported thereby, and has for its objects to produce a device whereby—

"First. The lamp will be prevented from turning in the stand.

"Second. The stand will be prevented from being collapsed when the lamp is in position; and

"Third. The lamp will always be properly seated in the stand."

And he claimed:

"1. A lamp comprising a body with contracted parts perpendicular to its base in several places, in combination with a stand having a plurality of pivoted legs engaging with such contracted parts, whereby said stand is prevented from collapsing by the engagement of the legs with such contracted parts. * * *

"3. A lamp of cylindrical shape having a plurality of vertical grooves in its exterior surface, in combination with a stand having members extending above the lamp and provided with inwardly projecting portions so separated that there is a separating space less than the greatest diameter of the lamp and of greater diameter than the diameter of the lamp at the bases of the grooves, whereby when the lamp and stand are assembled said portion will engage with the bottom of the lamp and prevent proper positioning of the lamp until the grooves and inwardly projecting portions are brought into alinement."

Before considering the question of patentability, it may be pointed out that defendant's grooved can, in combination with defendant's stand, admittedly does not infringe, nor can infringement be charged against defendant's grooved can, when used with the so-called Nelson stand, which plaintiff formerly used.

Prior to the applications for the patents in suit, plaintiff was manufacturing and successfully selling stands of the type shown in the Nelson patent, No. 1,096,185, granted May 12, 1914, which consisted of the identical stand shown in the combination patent here under consideration. Nelson provided, inter alia:

"When in place, the lamp will rest upon the base 1 and will be encompassed by three legs, the curved middle portions of the legs engaging with the body of the lamp."

The alleged inventor, Ball, therefore, must be presumed to have had before him the Nelson stand, with the information as to the location of the engaging point to be utilized when a container would be placed in the stand.

The patent to Eichelkraut, No. 1,050,113, granted January 14, 1913, was for a portable and collapsible stand for spirit stoves. Ei-

chelkraut had pointed out that the can should be provided with grooves adapted to fit over the edges of the stand members $a$ and $b$. (See lines 65 et seq. of Eichelkraut patent.)

The appropriate relation of a groove container with a stand such as Nelson disclosed, could, in my opinion, be worked out by a man skilled in the art, even though the Eichelkraut patent had never existed. Plaintiff insists that Ball—

"was the first to make a collapsible stand and container in which the container is the sole means of locking the legs of the stand against collapsing and in which it is absolutely impossible to use the container for heating purposes without locking the legs against collapsing."

While it may be said that the present so-called Sternau can and stands accomplished this result in an admirable way, yet the thought was practically and fully exemplified in the combination of the Nelson stand with a plain ungrooved can.

The fact that the Ball combination patent may work out so as to produce a better device does not impart to the Ball patent the high character of invention. Other patents, perhaps, might be referred to; but I think enough of the prior art has been mentioned to satisfy the requirements of the case.

I have passed by the question of double patenting, because unnecessary to consider, in view of the conclusion as to the question of patentability.

It is of some materiality in the case that, as the Sternau stands are now constructed, it would be impossible for the public to utilize, in Sternau stands, plain cans containing solid alcohol bought from other manufacturers. The effect is really to delimit the use by the public of solid alcohol put up in the ordinary and well-known way.

Before invention can be accorded to this combination patent in such circumstances, it must be entirely clear that the inventive thought is present, and expressed and duly claimed. It is immaterial that, as one of the results, the defendant may enter more fully into competition with plaintiff, especially in respect of what are known in the trade as the refills, viz. the cans containing the solid alcohol.

The case really belongs, not in the domain of the patent law, but in the broad field of competitive business. So far as the devices here employed are concerned, the battle for supremacy must be won, not with the powerful aid of patent control, but by superiority of product and business ability in competitive effort for the favor and patronage of the public.

As thus the combination patent is held void for want of invention, the bill is dismissed, with costs.