## SUDIAH v. JACOBSON et al.
## SAME v. MANHATTAN SHIRT CO.

District Court, S. D. New York.
April 14, 1931.

Warfield, Fraser & Brown, of New York City, for plaintiff.

Munn, Anderson, Stanley, Foster & Liddy, of New York City, for defendant F. Jacobson & Son.

Briesen & Schrenk, of New York City, for defendant Manhattan Shirt Co.

SYMES, District Judge.

The plaintiff, Rachel Sudiah, patentee and owner of United States patent No. 1,-154,943, brings separate actions against the defendants, the Manhattan Shirt Company and Ferdinand Jacobson and others, doing business as F. Jacobson & Sons, for infringement of said patent. By agreement the two actions were consolidated and tried together.

The plaintiff claims to be the original and sole inventor of a certain new and useful improvement in soft fold-over collars. "The object of the invention is a collar of the character specified which, while embodying all the advantages of the ordinary soft collar, overcomes the disadvantages now inherent in these collars, of sagging in front, and thus becoming unsightly."

The claim is: "As a new article of manufacture, a turned-over soft collar embodying a substantially up-standing neck-band and a turned-over portion, said collar being provided at each end of the turned-over portion with a substantially upright strip of substantially rigid material, of different material from that composing the body of the collar, said strips being entirely separate and distinct from each other, and approximately of the same length as the height of the turned-over portion of the collar and positioned in pockets located between the plies of said collar, the turned-over portion being in height substantially the same as the height of the neckband of the collar, whereby the lower ends of the supporting strips are adapted to rest upon the shirt bosom or collarbone of the wearer for the purpose of maintaining said turned-over portion in extended position and simultaneously supporting the neckband against sagging."

It is alleged that defendants are infringing by making, or causing to be made or sold, etc., soft fold-over collars embodying the plaintiff's invention, and have refused to desist therefrom after notice.

The defendants admit the issuance of the patent, but deny infringement or the violation of any rights of the plaintiff. Further answering, they aver that in view of the prior state of the art, as shown by ten American and one British patent cited, there was no invention and no patentable novelty in the subject-matter of the Sudiah device at the time the plaintiff claims to have invented the same, and that it is invalid.

It is not necessary to discuss infringement until it is determined that the patent embodies invention. Counsel for defendants waive all questions of anticipation, and urge as their principal argument that in view of what is disclosed in the prior patents, and facts that are of common knowledge, there is nothing in the structure of the Sudiah patent that discloses invention.

The history of the prior art, disclosed by the record and the patents discussed, shows that soft fold-over collars have been a common article of masculine wear for many years, and that for a long time persistent efforts have been made to overcome the one obvious defect; the tendency of the fold-over portion, especially the front points, to curl up and wrinkle.

Stiffening elements have been used in soft collars for many years. The early efforts were crude and impractical. See the Forest patent, No. 552,429, December 31, 1895 (not cited), in which the stiffening element consisted of paper or other suitable material, extending for the full width, of the collar from the front points back almost to the top of the shoulder. This gave the desired stiffening effect, but made the soft collar, for

all practical purposes, a stiff collar. It never attained commercial success. Other stiffening devices tried, such as disclosed in the Anderson and Barbour patents, likewise stiffened most of the turned-over portion.

Further efforts and improvements are indicated by the patents listed in the answers, such as the Kelsey British patent, 16,314, November 9, 1905, which "has as its object to provide means whereby the ends of the peaks of such collars shall not curl or turn up." This is accomplished by stitching a narrow strip of whalebone or other stiffening material to the underside of the collar peak, or end, at an angle so as to keep the peak or end firmly against the shirt front. This strip extends from the lower point to the upper edge, at an angle of 45 degrees from the lower edge. This device, to a large degree, accomplishes the desired result. His stiffening element is of the same material and size as that used by Sudiah, but instead of being inserted between the plies, is affixed by stitching to the underside and apparently is not removable.

Parker, No. 866,509, September 17, 1907, in atttemping to overcome what he described as the tendency of soft collars attached to the shirt body to sag or fold at the front and present an unsightly appearance, used a small wire frame, consisting of a bar of wire bent laterally, so as to form two fingers, one longer than the other. This is inserted between the plies, through an eyelet into the fold-over portion of the collar, so that the wire when in place lays along the underside of the front, or vertical edge, with the two bars extending longitudinally along the upper and lower edges respectively. This device was removable at will and possesses some merit.

Robinson, No. 1,112,033, September 29, 1914, described the objection to the soft collar, as the untidy and disordered appearance which the front ends of the collar top present, when disarranged by the knot of the necktie and the movements of the wearer; due largely, he says, to lack of strength and stiffness, which is necessary to retain said ends symmetrically disposed. His object was to impart to the front edges such stiffness as will enable them to maintain in use the symmetrical relationship. He incorporates in "the folded end-edges of the top," folded reinforce strips, inclosed and stitched between the plies of the top, in such a manner as to form along each end-edge a zone of much greater thickness than at other points in the top. This device imparted stiffness to the front edge by a plurality of plies inturned and secured together along the edges, together with a reinforcing strip inturned between. This undoubtedly gave the desired result, but was not practical, as this extra thickness on the edge was very likely to be torn and damaged in ironing.

The Taylor patent closely resembles Robinson and shows a collar in which the forward end of the turned-over part is cut a little longer than required. This excess material is folded so as to stiffen the front edge.

Two other patents pertinent to this discussion are the Keitel, original No. 900,932, October 13, 1908, and Laridon, No. 948,958, February 8, 1910, referred to by the patent examiner. These are devices for supporting women's collars and holding them in an upright position. Their basic elements are narrow strips of stiffening material held in place in vertical pockets affixed upright in the collar at convenient points, and so constructed as to prevent the stiffening element from tearing the flimsy material of the collar, or chafing or rubbing the skin of the wearer.

This brief résumé of a few of the patents cited, together with other pertinent information of common knowledge, indicate that the efforts to overcome the one obvious defect in soft collars have proceeded along the same line. It is agreed that in order to accomplish the desired result, without depriving the soft collar of its advantages over the starched collar, stiffness must be imparted to the front edges, or points. The material first used was heavy and rigid. The use of whalebone, and later of celluloid, both more flexible, yet of sufficient stiffness, has proven successful. The size of these stiffening elements has been materially reduced from the large elements nearly as wide as the collar and extending backward along the neck for a considerable distance, to the small strip used by Kelsey and Sudiah, less than one-half inch wide, and in length a little less than the distance between the top of the collar and the front point.

The stiffening element must be concealed either in pockets inserted between the plies, or of suitable material sewed to the under side of the fold-over portion of the collar. It goes without saying that there is no inventive faculty involved in leaving the end of the pocket open so that it can be removed at pleasure—a device in use before Sudiah. The query quite naturally arises: Has the patentee in the case at bar done more than to put a supporting, flexible piece of material in an article of wearing apparel to hold it in

shape? Counsel argue rightly that this has been a common practice among dressmakers, tailors, and garment makers the world over for a long time, and that the same function is performed by such a stiffening element, whether inserted in a collar, the shoulder of a suit of clothes, an overcoat, dresses, waistbands, corsets, etc. In fact, Laridon, supra, describes his device as suitable for garments, waists and corsets, as well as women's collars.

The patentee recognized, and so stated in her argument before the Patent Office, that it has been the custom to have stays and stiffening members in collars, particularly those worn by women, but that theretofore no attempt had been made to utilize expedients of this character in fold-over collars. In the first letter of rejection, April 2, 1914, however, the examiner contradicted this statement, and the patentee accepted the cancellation.

The file wrapper discloses the allowance of the patent only after repeated amendments, changes in drawings, and an entire recasting of the claim as finally allowed. The first claims were rejected April 2, 1914, in view of the state of the art as shown by Kelsey, Parker, Taylor, and Field patents. Again on July 9th following, upon the Parker and five other patents, including the Laridon and Keitel, discussed above, and for the third time on October 9th, on reference to the Robinson patent, and still again on November 13th, on references of record.

Throughout the discussion with the Patent Office, the patentee emphasized a twofold purpose of her patent. In addition to the point we have discussed, i. e., the stiffening of the front point to prevent wrinkling and sagging, she urged that with this supporting piece positioned in the manner indicated, it supported the neckband, preventing it from sagging. This latter result, according to her argument, was due to the fact that the point of the stiffening members, resting upon the bosom of the wearer, "enables them to form a support for the front portion of the band of the collar adjacent to button holes therein, whereby said band is also effectively supported against sagging."

This latter feature is urged as proof of the inventive faculty. I am not persuaded to this view, as other features of this collar more effectively accomplish this object and render the latter unnecessary.

In the first place, the collar overlaps at the front (Figs. 1 and 2). Buttonholes in the usual position co-operate with a collar

button to hold the lower portion of the neckband in place, while the upper edge of the neckband is held snugly in place by a co-operating button and buttonhole situated on one free end of the collar band and on the other free end thereof. In addition, there are two buttonholes at the front and near the free points of the turned-over portion, with which co-operates the usual link commonly used to hold the free ends of the turned-over portion in proper form. In view of this construction any support afforded the neckband by the stiffening element in question is superfluous.

On the other hand, if the collar be worn with the single collar button, without the addition of the co-operating button and buttonhole at the top, and the link, it is very doubtful if the Sudiah device would give to the collar band any effective support. The free point rests upon the bosom of the wearer at so slight an angle that the stiffening element would cause the lower point to slip down the front of the shirt whenever the chin of the wearer was dropped, or pressure applied to the top of the collar. It would not, as the patentee in effect claims, become fixed, as it must if it is to support the neckband. Moreover, as stated in plaintiff's specifications, these "lower ends lightly rest on the shirt bosom, or on the collar bone of the wearer." This feature is not claimed in any other of the patents discussed, and in my opinion would not function as claimed.

But be that as it may, it would seem that the Parker device, with its two longitudinal pieces extending from the front edge along both the upper and lower edges of the fold-over portion, would more effectively accomplish this result than Sudiah.

The Sudiah device represents an advance in the art only to the extent that it accomplishes a little more effectively, perhaps, the object sought in the art for so many years, but not to such degree as would justify a patent.

I agree with the Patent Office examiner in his four successive rejections of the claims, and am not persuaded that he was right in reversing his position. The only difference between the device in suit and Kelsey's patent is that Sudiah places her stiffening element in a vertical position from the lower point, while Kelsey places the lower point of his stiffening element (of the same size and material), likewise in the lower point of the collar, but positions it 45 degrees off of the vertical. It would therefore seem that the ordinary skilled mechanic—who is given so

much free publicity in patent literature—having the prior patents before him, and desiring to improve upon them, would, as a matter of course, experiment by changing this angle, and if he happened to place it in the same position that Sudiah did, I do not believe he could rightfully claim that he should be promoted to the rank of inventor, with all the perquisites that go therewith. To paraphrase the language of Judge Mayer in Sternau & Co. v. Borgfeldt & Co. (D. C.) 254 F. 582, 584: It may very well be that to make such a change in the location of the stiffening strip in a suitable manner requires the skill of a capable mechanic or artisan; "but, obviously, patentability is not concerned with skill of that character." See also Smith v. Magic City Kennel Club, Inc. (February 25, 1931) 282 U. S. 784, 51 S. Ct. 291, 75 L. Ed. 707.

I am mindful of the well-known rule that a device which embodies but a slight change from the prior art may, as Judge Coxe held in Young v. Wolfe (C. C.) 120 F. 956, constitute an invention. And that: "The simplicity of the device, and its apparent obviousness after the event, ought not to detract from its meritoriousness." McKay & Copeland Lasting Machine Co. v. Dizer (C. C. A.) 61 F. 102, at page 104.

But, according to O'Rourke Engineering Co. v. McMullen (C. C. A.) 160 F. 933, the court must first determine that this benefit is full and extensive. In the instant case the previous art having had some success in solving the difficulty, the rule in McKay & Copeland Lasting Machine Co. v. Dizer, supra, does not apply; it being limited to situations where there had been nothing but failure.

The question of patentability is one of fact. Decided cases give us principles, but rarely do we find two cases alike on the facts. This case presents a situation where the patentee merely carried the original thought forward a step, as many others had before her. Her device manifestly does the same thing, to wit, stiffens the edge of a collar by substantially the same means; that is, the use of a flexible stiffening element, with better results, perhaps. This is not invention. Burt v. Evory, 133 U. S. 349, 10 S. Ct. 394, 33 L. Ed. 647. In Guidet v. Brooklyn, 105 U. S. 550, 552, 26 L. Ed. 1106, it is said: "This was simply carrying forward the old idea, and doing what had been done before in substantially the same way, but with better results. The change was only in degree, and consequently not patentable." Justice Bradley of the Supreme Court, in his often-quoted opinion, Atlantic Works v. Brady, 107 U. S. 192, 2 S. Ct. 225, 27 L. Ed. 438, declares that where an art is developing step by step, as the results of the efforts of many, and each step forward prepares the way for the next, courts must be careful not to grant to a single party a monopoly for every slight advance made, except where the invention is somewhat above the ordinary and distinctly shown; that it was never the object of the law to grant a monopoly for every shadow or shade of an idea which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufacture.

These views render consideration of the other questions unnecessary.

Findings of fact and conclusions of law agreeable to these views, and a decree dismissing the bill, may be submitted.